In re WAVELENGTH, INC. a
California corporation,
[Alleged] Debtor.

Sol JAFFE and Brian
Edwards, Appellants,

v.

WAVELENGTH, INC., a California corporation, and Bert Kronfeld, Appellees.

BAP Nos. CC–86–1071–VAbM,
CC–85–1052–VAbM.

Bankruptcy No. LA84–15804–BR.

United States Bankruptcy Appellate Panels, of the Ninth Circuit.

Argued Nov. 21, 1985.
Decided May 15, 1986.

Joseph L. Golden, Swerdlow, Miller, Seal & Swerdlow, Beverly Hills, Cal., for appellants.

Lawrence C. Meyerson, Rosen, Wachtell & Gilbert, Los Angeles, Cal., for appellees.

Before VOLINN, ABRAHAMS and MEYERS, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

This is an appeal from an award of punitive damages, attorneys' fees and costs entered pursuant to 11 U.S.C. § 303(i) in a case in which the parties stipulated that the Chapter 11 bankruptcy petition should be treated as involuntary and dismissed.

### I.

#### A.

The alleged debtor was Wavelength, Inc., a California corporation engaged in the business of designing, installing, and maintaining light and sound systems for restaurants, lounges, clubs, and special events. Wavelength was founded by appellant Brian Edwards ("Edwards") and appellee Bert Kronfeld ("Kronfeld"). During the relevant period, Edwards and Kronfeld each owned 50 percent of all the outstanding shares of Wavelength, and were co-chairmen of the 3-person Board of Directors. The third director was appellant Sol Jaffe ("Jaffe"), who was Wavelength's Vice President of Finance, Secretary, and Management Consultant.

Beginning on April 1, 1984, Ron Goldberg ("Goldberg") became Wavelength's President and Chief Executive Officer, at which time Kronfeld and Edwards, who had been president and vice president, respectively, both became Senior Account Executives. Kronfeld had a five-year employment agreement with Wavelength beginning April 1, 1984. Subsequently, Goldberg terminated Kronfeld, effective August 6, 1984.

#### B.

On August 7, 1984, two opposing actions were filed in California state court. Jaffe and Edwards filed a petition for judicial supervision of voluntary winding up and dissolution of corporation against Wavelength and Kronfeld. Kronfeld filed a complaint to remove director and petition to

appoint provisional director against Wavelength and Jaffe.[1]

On the following day, August 8, 1984, at approximately 12:00 noon, a state court judge, following a hearing at which Jaffe testified, issued a temporary restraining order and order to show cause in the action initiated by Kronfeld. The state court judge removed Jaffe as a director of Wavelength and prohibited him from exercising any powers as a director of Wavelength. The state court judge also appointed Dickran M. Tevrizian as a provisional director of Wavelength with all the powers of a director.

Later that same day, at 2:32 p.m. on August 8, 1984, Wavelength filed a voluntary Chapter 11 petition in the bankruptcy court. The petition is purportedly signed by Jaffe as secretary of Wavelength.

It is undisputed that at no time during the state court hearing did counsel for Wavelength, Edwards, or Jaffe—or Jaffe himself—indicate to the state court judge that a bankruptcy petition had been or would be filed.

On August 17, 1984, an adversary proceeding was initiated in bankruptcy court by Wavelength, Jaffe, and Edwards against Kronfeld and Tevrizian. Shortly thereafter, Kronfeld and Wavelength filed an *ex parte* application for order dismissing Chapter 11 case and awarding punitive damages. The application sought punitive damages of $5 million against Jaffe and Edwards.

### C.

On August 22, 1984, Kronfeld's attorney presented a stipulation signed by himself, the attorney for Wavelength, and the attorney for Edwards and Jaffe, which agreed to the bankruptcy court order that was signed and filed on August 22 and entered on August 27, 1984.

Pursuant to the stipulation, the bankruptcy court found that Jaffe had no authority to act as a director of Wavelength at the time the Chapter 11 petition was filed; and that Kronfeld did not participate in, or receive or waive notice of, the Board of Directors meeting at which the Chapter 11 petition was allegedly authorized. The bankruptcy court ordered that the Chapter 11 petition would be treated as involuntary, and would be dismissed after the Court had ruled upon the request for damages arising from the filing of the Chapter 11 petition. The order also dismissed the adversary proceeding without prejudice and lifted the automatic stay as to the state court actions.[2]

### II.

Several months later Wavelength and Kronfeld brought a motion for costs, attorneys' fees, actual and punitive damages pursuant to 11 U.S.C. § 303(i), arguing that the bankruptcy petition had been filed in bad faith.

This motion was vigorously contested, with an opposing memorandum and declarations, a reply memorandum and declarations, and supplemental opposition and declarations. It was heard on March 14, 1985. The bankruptcy judge ruled that he would award $10,000 in punitive damages each against Jaffe and Edwards. He gave the parties two weeks in which to file a declaration as to attorneys' fees, and two weeks in which to oppose the requested attorneys' fees, but ruled out further reply or oral argument.

On March 25, 1985, Wavelength and Kronfeld filed the declaration of Lawrence C. Meyerson, their attorney from the Rosen firm, and lodged proposed findings of fact, conclusions of law and order. The Meyerson declaration requested an award of attorneys' fees and costs in the total amount of $46,881.50 for the Rosen firm; the provisional director, Tevrizian; and two other law firms, Danning, Gill and Dolman, Wolfe.

---

1. Neither of these two documents filed in state court is in the record on appeal here. There is no dispute, however, that they were filed.

2. According to counsel at oral argument, the state court actions were dismissed.

On April 8, 1985, the 14th day after the movants' materials were filed and lodged, the bankruptcy court signed and filed their proposed findings of fact, conclusions of law, and order, inserting the full amount of attorneys' fees and costs requested. The bankruptcy court found, among other things, that at the time of the state court TRO, Jaffe and Edwards knew that the Chapter 11 petition had not yet been filed; that Jaffe and Edwards filed the Chapter 11 petition "with the sole intent of pressuring Kronfeld into withdrawing from Debtor's business and selling his interest in Debtor to Jaffe and/or Edwards"; [3] and that at the time Jaffe and Edwards filed the Chapter 11 petition, Wavelength was not insolvent.

The bankruptcy court concluded that Jaffe and Edwards filed the Chapter 11 petition in bad faith, and that Wavelength and Kronfeld were damaged thereby. Wavelength was awarded punitive damages against Jaffe in the amount of $10,000; punitive damages against Edwards in the amount of $10,000; and "damages in the sum of $46,881.50 on account of costs and attorneys' fees incurred by Wavelength in connection with this Chapter 11 case."

The following day, April 9, Jaffe and Edwards filed their opposition to the proposed findings of fact and conclusions of law, as well as an opposing declaration on the issue of attorneys' fees. The findings, conclusions, and order that had been signed and filed on April 8 were entered on April 11, 1985. Jaffe and Edwards filed a timely notice of appeal from that order on April 22, 1985. On May 14, 1985, Jaffe and Edwards filed a motion for reconsideration of the order they had already appealed from. The motion was based upon BR 9024 and Fed.R.Civ.P. 60(b)(1), (2) and (6). They filed a 54-page legal memorandum, 12 declarations in support of the motion for reconsideration, and two declarations in opposition to the award of attorneys' fees.

On May 27, 1985, the bankruptcy court denied the motion for reconsideration without a hearing. Jaffe and Edwards filed a timely notice of appeal from that order on June 5, 1985.

The underlying appeal, BAP No. CC–86–1071, is hereby consolidated with the appeal from the order denying the motion for reconsideration, BAP No. CC–85–1052.

### III.

#### A.

■ There are two procedural issues we must address before proceeding to the merits of the appeal. The first procedural issue is whether the bankruptcy court had jurisdiction to rule on the motion for reconsideration after the notice of appeal from the underlying order had been filed. It did not. A trial court has no jurisdiction to enter an order under Rule 60(b) if a notice of appeal has been filed. *Smith v. Lujan*, 588 F.2d 1304, 1307 (9th Cir.1979). *See also Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862, 869 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976).

■ The appellees request that we dismiss the appeal taken from the bankruptcy court's denial of appellants' motion for reconsideration. We decline to do so. In the interest of judicial economy, we will treat the notice of appeal from the denial of the motion for reconsideration as a motion for remand. *Smith*, 588 F.2d at 1307. Within that framework, we may consider the arguments made in the appellants' motion for reconsideration and the record submitted thereon.

#### B.

The second procedural issue is whether the appellants' opposition to the proposed findings of fact and conclusions of law, and the declaration of Howard Wollitz in opposition, both of which were filed with the

---

**3.** We note that a "buy-out agreement" between Kronfeld and Edwards, executed on August 30, 1982, provided that it would terminate, *inter* *alia,* upon the "dissolution, bankruptcy, or insolvency of the Company."

bankruptcy court on April 9, 1985, after the underlying order appealed from was signed and filed, are properly before this panel. "[T]he scope of review is limited to the record and to that which is properly presented below." *Union Bank v. Blum,* 460 F.2d 197, 202 (9th Cir.1972). The appellees contend that these documents were filed one day late and therefore should not be considered. The appellants reply that these documents were timely filed because three days should be added to the time period for service by mail.

Unfortunately, the record is not entirely clear on this point. According to the transcript of the March 14, 1985 hearing, the bankruptcy court said:

> ... well, I'll give you two weeks after—from the date of the filing of them, whatever that is, two weeks to respond.

Shortly thereafter, the appellees' attorney asked the court:

> Your Honor, when we file our declaration as to the attorneys' fees they'll have 14 days to oppose the attorneys' fees, and within what time can we rebut?

The bankruptcy court did not correct counsel's reference to "14 days."

We construe the bankruptcy court's denial of the motion for reconsideration to mean that it considered and rejected the arguments made by appellants in the opposition papers and declaration filed on April 9, 1985. Therefore, we consider those papers to also be properly before this panel on appeal.

### IV.

■ The appellees' motion for costs, attorneys' fees, actual damages and punitive damages was brought pursuant to 11 U.S.C. § 303(i), which provides for costs, attorneys' fees, or, in the event of bad faith, actual and punitive damages.

The legislative history of Section 303(i) indicates the use of the term "or" is not exclusive, and therefore punitive damages, if appropriate, may be added to an award of costs and reasonable attorneys' fees.

*Matter of Ramsden,* 17 B.R. 59, 61 (Bankr. N.D.Ga.1981)

We consider that the foregoing section was brought into play on the Court's order that the bankruptcy filing by Jaffe and Edwards would be treated as an involuntary petition subject to dismissal and a hearing on the request for damages by Wavelength and Kronfeld.

### V.

#### A.

Appellants contend that the punitive damages awards totaling $20,000 was an abuse of discretion. They argue that the bankruptcy court's findings of fact concerning bad faith are clearly erroneous for three reasons: (1) Neither Jaffe nor Edwards manifested bad faith toward Wavelength (in contrast to Kronfeld); (2) Edwards (in contrast to Jaffe) did not act in bad faith; and (3) both Edwards and Jaffe acted upon advice of counsel.

Findings of fact shall not be set aside unless clearly erroneous. BR 8013. A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *accord Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The Bankruptcy Code does not define "bad faith" for purposes of awarding punitive damages under § 303(i). Courts wrestling with this term have used somewhat vague definitions. One line of cases holds that bad faith exists when a petition is "ill advised or motivated by spite, malice or a desire to embarrass the debtor." *Camelot, Inc. v. Hayden,* 30 B.R. 409, 411 (E.D.Tenn. 1983), citing 2 Collier on Bankruptcy ¶ 303.-12 (15th ed. 1979). A second line of authority looks to whether the creditor's actions were an improper use of the Bankruptcy Code as "a substitute for customary collection procedures." *See In re Advance*

*Press & Litho, Inc.,* 46 B.R. 700, 703 (D.Colo.1984).

■ Whether a party acted in bad faith is essentially a question of fact. *In re Advance Press & Litho, Inc., supra,* at 704. Bad faith should be measured by an "objective test" that asks "what a reasonable person would have believed." *In re Grecian Heights Owners' Ass'n,* 27 B.R. 172, 173 (Bankr.D.Or.1982).

■ The record contains ample evidence to support the bankruptcy judge's finding, that Jaffe and Edwards filed, or caused the Chapter 11 petition to be filed, in bad faith. First, Jaffe and Edwards stipulated to entry of an order finding that at the time the Chapter 11 was filed, Jaffe had no authority to act as a director of Wavelength by virtue of the state court temporary restraining order, and that Kronfeld did not participate in or waive notice of the Board of Directors' meeting at which Jaffe and Edwards allegedly elected to file a Chapter 11 petition. Second, despite the fact that he had been removed as a director, Jaffe signed other documents filed in the bankruptcy court approximately one week later as the purported "authorized representative" for Wavelength. Those documents also failed to inform the bankruptcy court that Kronfeld was a 50 percent shareholder, with Edwards, in Wavelength, which further indicates bad faith, causing the court below to comment that this is an "outrageous case." Third, Jaffe's silence in the state court proceeding about the imminence of a Chapter 11 bankruptcy petition indicates bad faith.

■ All of appellants' arguments on the issue of bad faith must be rejected. The statutory language is that the petitioner must have "filed the petition in bad faith." 11 U.S.C. § 303(i). There is no statutory requirement that the bad faith must be directed toward anyone in particular. Courts have employed a more expansive definition of bad faith to include ill will or malice toward the debtor or its owners. *See, e.g., In re Advance Press & Litho, Inc., supra,* at 704.

Although the evidence is much stronger against Jaffe, the record contains evidence also as to Edwards. Edwards admitted that he and Jaffe agreed a Chapter 11 petition should be filed, without giving notice to Kronfeld, the third Director. Edwards was a petitioner in the state court, as well as a plaintiff in the bankruptcy court adversary proceeding, where the mischaracterization as to Kronfeld's relationship to the corporation was made.

■ Punitive damages may be assessed even if appellants rely on counsel for all the resulting acts exhibiting bad faith. Although reliance upon counsel's advice has been held to preclude a finding of bad faith where there is an absence of evidence of malice or ill will, *In re Advance Press & Litho, Inc., supra,* at 704, that same court refused to permit the defense for a third individual who had been motivated by ill will and malice. Some courts also have held petitioners responsible for their attorneys' negligence. *Matter of Ramsden, supra* (punitive damages assessed when attorneys' failure to consult statute resulted in filing of a frivolous petition).

Finally, the bankruptcy court found that Wavelength was not insolvent at the time the Chapter 11 petition was filed. Such a finding refutes Jaffe's and Edwards' explanation for filing the Chapter 11 petition and supports the conclusion of bad faith. In their reply brief, the appellants contend that insolvency is not a requirement for a voluntary bankruptcy petition, and that it was not the intent of the stipulation to treat the petition as having been involuntary as of August 8, 1984, the date of filing, but rather from August 22, when the order on stipulation was entered. The record, however, contains evidence supporting the bankruptcy court's conclusion.

**B.**

■ Appellants also contend that the amount of punitive damages awarded was excessive, arguing that it was 20 times what should have been awarded if such an award were warranted.

In making the award, the bankruptcy court remarked:

> As far as the other damages, I'm convinced there were damages. The problem is, as far as the declaration, it's hard for me to tell exactly how much. But I'm awarding against each party $10,000 punitive damages that will—I think the damages probably were well in excess of that, but I can't really tell for sure. There was an obvious disruption, but this is just such an outrageous case that to cover just the normal things that punitive damages cover, they are provided in the Code, but also the fact I'm not awarding actual damage, and I'm not really that sure of what they are, and, for that reason, I'm not awarding any actual amount. But it is clear to me, from reading the papers, what happened, that there was some substantial damage. The problem is, I can't tell how much. So, in part, that's one reason I'm awarding the punitive damages. But mainly because it was outrageous from the very beginning. I'm just amazed that a case such as this would get that far.

The Bankruptcy Code specifically authorizes punitive damages "even in the absence of or in addition to actual damages." 11 U.S.C. § 303(i)(2); *In re Advance Press & Litho, Inc., supra,* at 706.

We do not find the award of punitive damages to be excessive in any way, given all the factual circumstances in this unusual case.

## VI.

### A.

The appellants also contend that the bankruptcy court exceeded its authority and abused its discretion in awarding a total of $46,881.50 in attorneys' fees and costs.

■ A bankruptcy court's award of attorneys' fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of the law. *In re Nucorp Energy, Inc.,* 764 F.2d 655, 657 (9th Cir.1985).

■ Unlike fee awards under 11 U.S.C. § 330, the statute, rules, and case law interpreting § 303 have not delineated clear standards for finding whether a particular fee is justified. At a minimum, however, compensation should be reasonable. *York Int'l Bldg., Inc. v. Chaney,* 527 F.2d 1061, 1068 (9th Cir.1975). Any award should also be based on detailed accounts of services rendered. *In re Nucorp Energy, Inc., supra,* at 659. Although the type of fee application used for § 330 awards is not requisite, the records submitted in a § 303(i) setting should clearly identify the nature of work performed, its relevance to the defense to the involuntary petition, and the time expended.

### B.

The only evidence supportive of the award was the declaration of Lawrence C. Meyerson, of the Rosen firm, filed on March 25, 1985 at the bankruptcy court's request. The Meyerson declaration attached an 11-page document fully detailing the services rendered by the Rosen firm from August 9, 1984 through March 14, 1985, furnishing descriptions of services rendered, the dates on which those services were rendered and by whom, the time spent, and the billing rates of the 12 lawyers and legal assistants assigned to the case. The fees amounted to $34,813 and the costs to $1,139.77, for a total of $35,952.77. Billing rates were $60.00 per hour for the legal assistants, $95 to $150 per hour for associates, and $175 to $225 per hour for partners. The claim for attorneys' fees and costs for the Rosen firm is documented. The only questions are whether any of the work was done for non-bankruptcy disputes; whether all of the work was done for Wavelength; and whether the amount awarded was excessive.

Appellants contend that $22,999.50 of the fees and costs attributable to the Rosen firm are not recoverable because the Rosen firm represented only Kronfeld, not Wavelength, until November 28, 1984, at which

time Wavelength formally substituted the Rosen firm for the law firm of Danning, Gill, its special bankruptcy counsel. Appellants also contend that approximately one-half of the fees attributable to the Rosen firm, or $17,003.50, were incurred in connection with non-bankruptcy disputes. They attach an appendix to their opening brief that criticizes specific items.

■■■ While we tend to agree with the view expressed by the bankruptcy court that attorneys' fees in this range seem to be high for a case of relatively short duration, the bankruptcy court did not abuse its discretion in awarding the full amount requested by the Rosen firm. This was in essence an intensely contested stockholder dispute. Wavelength, the debtor, was involved heavily in the litigation. We have reviewed the appendix to the appellants' opening brief and conclude that most of the criticisms are aimed at the way in which the services rendered were described. Given the finding of bad faith as to the activity and litigation attending the filing of the Chapter 11 petition, the award attributable to the Rosen firm, which is fully documented, was within the bankruptcy court's discretion.

### C.

The remaining $10,928.73 in attorneys' fees and costs attributable to others beside the Rosen firm poses more difficulty. The fees and costs in this category awarded to Wavelength were broken down as follows:

```
$ 6,436.75  -  Danning, Gill (special bankruptcy counsel)
  3,040.69  -  Dolman, Wolfe (general counsel)
  1,451.29  -  Dickran Tevrizian (provisional director)
$10,928.73
```

Appellants challenge the lack of supporting documentation for these fees. The only documentation is Meyerson's declaration that these two firms and Tevrizian submitted bills to Wavelength which have been fully satisfied, and that "it is estimated" that 75% of Dolman-Wolfe's time and 50% of Tevrizian's time was related to the bankruptcy, and therefore only those percentages of the total amounts billed were being requested. No support in the record from anyone else connected either with Wavelength or those two firms or Tevrizian was attached to the declaration, as was done with the Rosen firm's own request.

■■■ We do not agree with appellants' contention that these fees and costs are not recoverable because these other two firms and Tevrizian did not seek prior bankruptcy court approval of their employment, as would be required under 11 U.S.C. § 330. However, we conclude that the documentation of the request for $10,928.73 in other attorneys' fees and costs is insufficient to support the award. Upon remand, the bankruptcy court may consider additional evidence on this issue.

### VII.

The bankruptcy court's award to Wavelength of punitive damages in connection with the bad faith filing of the Chapter 11 petition is affirmed. The award of attorneys' fees and costs is affirmed as to those fees and costs attributable to the Rosen firm, but reversed and remanded as to those fees and costs attributable to the other two law firms and the provisional director. On remand, the bankruptcy court should reconsider that portion of the award upon the submission of evidence by Tevrizian and counsel.