**In re WLB–RSK VENTURE, a California General Partnership, Alleged Debtor.**

**No. LA 03–16604 TD.**

United States Bankruptcy Court, C.D. California.

July 28, 2003.

Edward Wolkowitz, Robinson, Diamant & Wolkowitz, Los Angeles, CA.

Eve H. Wagner, Sauer & Wagner LLP, Los Angeles, CA.

Steven R. Friedman, Beverly Hills, CA.

Ira Benjamin Katz, Law Offices of Ira Benjamin Katz, A Professional Corporation, Los Angeles, CA.

John B. Marcin, Marcin & Barrera LLP, Los Angeles, CA.

MEMORANDUM OF DECISION RE: WARREN L. BRESLOW'S MOTION TO DISMISS INVOLUNTARY PETITION AS BAD FAITH FILING

THOMAS B. DONOVAN, Bankruptcy Judge.

### INTRODUCTION

Hearing on the Warren L. Breslow's ("Breslow's") Motion to Dismiss Involuntary Petition as a Bad Faith Filing ("Motion") was held on May 14, 2002 and continued for further hearing to June 4, 2003, at the conclusion of which the Motion was taken under advisement.

In coming to my decision on the Motion, I have considered the following: the Motion; Breslow's Request for Judicial Notice; the Joinder of Jona Goldrich and Jerome Snyder to Breslow's Motion; Petitioning General Partner Raymond S. Kaplan's ("Kaplan's") Opposition (With Request for Judicial Notice) to Breslow's Motion; Kaplan's Evidentiary Objection and Motion to Strike Portions of the Breslow Declaration; Breslow's Reply Brief; and all declarations included with, or related to, the aforementioned pleadings. I have also considered the involuntary bankruptcy petition and hereby take judicial notice of it and all other pleadings, orders, and documents I have been asked to take judicial notice of (on this Motion and on the accompanying motions heard at the same time), to the extent appropriate under Federal Rule of Evidence 201. I did not consider Breslow's Supplemental Points and Authorities Based on Subsequently Occurring Facts or Kaplan's Response to Breslow's Supplemental Points and Authorities, as these pleadings were unsolicited and were submitted after I took the motion under advisement. I announced oral rulings on all evidentiary objections at the June 4, 2003 hearing. Based on the evidence presented and the arguments of the parties, I make the following Findings of Fact and Conclusions of Law. Any finding of fact that should be considered a conclusion of law should be treated accordingly, and vice versa.

### FINDINGS OF FACT

Though the history of WLB–RSK Venture ("Venture" or "Alleged Debtor") and litigation affecting it is complex, for purposes of my ruling on Breslow's Motion, I believe the pertinent facts can be summarized as follows:

1. Venture is a California general partnership.

2. Venture has two general partners, Breslow and Kaplan. Breslow and Kaplan each has a 50 percent interest in Venture.

3. Venture was formed primarily as a vehicle through which a 15 percent interest in Channel Gateway, LP ("Channel"), as discussed below, could be purchased and held.

4. Channel was formed on March 30, 1989.

5. Channel's general partners are Jerome Snyder ("Snyder") and Snyder Marina Enterprises, LP, an entity comprised of numerous general partners and limited partners, including Jona Goldrich ("Goldrich").

6. Channel's original 15 percent limited partner was Marina East Holding Partnership, a California partnership ("MEHP"). Alan Robbins ("Robbins") at one time owned 99 percent of MEHP as its general partner.

7. Robbins borrowed money from Sumitomo Bank ("Sumitomo"). The loan was personally guaranteed by Snyder and Goldrich, and MEHP's 15 percent interest in Channel was

pledged by MEHP as security for the loan.

8. Robbins later borrowed money from Independence Bank ("IBank"). This loan was not personally guaranteed by Snyder and Goldrich, but MEHP again pledged its 15 percent interest in Channel to secure the IBank loan, though it had previously pledged the interest to Sumitomo.

9. Subsequently, Robbins was indicted by the United States of America on corruption charges to which he pleaded guilty.

10. After Robbins' guilty plea, the Sumitomo loan came due and Robbins defaulted. Snyder and Goldrich stepped in, acquired Sumitomo's Interest, and foreclosed on the pledge they held in MEHP's 15 percent interest in Channel. Venture was the successful bidder at the foreclosure sale, which took place in September 1992.

11. In connection with its purchase and as the sole consideration for its acquired interest in Channel, Venture executed a promissory note in the sum of $900,000 in favor of Goldrich and Snyder ("Note").

12. Shortly after Venture's purchase of the MEHP interest in Channel, the FDIC, as successor to Ibank, filed an action in the federal district court ("the FDIC Litigation") against all of the parties involved in the foreclosure and sale seeking to set aside the sale. As a result of this litigation: (a) two settlement agreements and an amendment to the Channel partnership agreement were executed in 1995 (collectively, "the Settlement") whereby MEHP was reinstated as a limited partner of Channel; (b) these agreements apparently were crafted specifically to leave Venture's interest untouched, though they may have resulted in some dilution of Venture's interest in Channel; (c) all parties to the FDIC Litigation, including Breslow but excluding Kaplan and Venture, participated in the Settlement. The FDIC later dropped its suit against Kaplan.

13. Kaplan later simultaneously initiated actions (collectively, "the Kaplan Channel Actions") in the federal district court ("the Kaplan District Court Action") and Los Angeles Superior Court ("the Kaplan State Court Action"), among others, seeking, among other things, to set aside the Settlement. The District Court Action was dismissed, the dismissal was affirmed by the Ninth Circuit, and petitions for rehearing *en banc* in the Ninth Circuit and for *certiorari* before the United States Supreme Court were denied. Kaplan's motion for summary adjudication in the Kaplan State Court Action was denied in 2001 on the basis of the state court referee's finding and conclusions that Kaplan lacked standing and the court lacked jurisdiction to upset the Settlement. The defendants' motion for summary judgment in the Kaplan State Court Action was granted in 2001. An appeal is pending, according to oral argument on the Motion.

14. Later, on September 7, 2001, Goldrich and Snyder initiated an action in the state court against Venture, Breslow, Kaplan, and others seeking to recover on the Note ("Note Action"). The Note Action is still pending. Kaplan removed the Note Action to this court, and I

remanded it to the state court by separate order.

15. On March 11, 2003, Kaplan filed an involuntary chapter 11[1] petition against Venture.

## CONCLUSIONS OF LAW

### KAPLAN HAD AUTHORITY TO FILE THE INVOLUNTARY

■■■ Pursuant to § 303(b)(3), an involuntary can be filed against a partnership by "fewer than all of the general partners in such partnership." § 303(b)(3). Therefore, Kaplan had a statutory basis and standing to file the petition against Venture.

### THE PETITION WAS FILED IN BAD FAITH AND, THEREFORE, WILL BE DISMISSED

*Bad Faith Under § 303*

■■■■ Though there is no statute or controlling decision establishing that bad faith is an independent ground for dismissing an involuntary,[2] since § 303(i)(2) specifically provides that sanctions can be awarded if an involuntary is filed in bad faith, it would seem to follow that Congress, in enacting § 303, contemplated the possibility of dismissal of an involuntary petition based upon bad faith.

Since § 303(i)(2) seems to imply that an involuntary petition can be dismissed for bad faith, and numerous cases support the proposition that bankruptcy petitions of any kind should not be employed for improper purposes (*See In re Marsch,* 36 F.3d 825 (9th Cir.1994); *In re Little Creek Dev. Co.,* 779 F.2d 1068, 1071–73 (5th Cir. 1986).), § 105(a) would seem to authorize the court to dismiss an involuntary based on a finding of bad faith. Such a conclusion would not seem to violate the principle that the court cannot enlarge its authority through the application of § 105(a).

■■■ In *In re Wavelength,* 61 B.R. 614 (9th Cir. BAP 1986), the BAP identified the standard to be applied in finding bad faith in the context of an involuntary for the purposes of awarding damages. As the court stated, "Whether a party acted in bad faith is essentially a question of fact. Bad faith should be measured by an objective test that asks what a reasonable person would have believed." *Id.* at 620 (citations and internal quotation marks omitted); *see also In re Johnston Hawks Ltd.,* 72 B.R. 361, 365–66 (Bankr.D.Hawaii 1987) (finding that involuntary was filed in bad faith and describing two tests for finding the existence of bad faith in the context of an involuntary: "One view finds 'bad faith' to exist where the petition is motivated by ill will, a sense of malice, or to embarrass or harass the debtor.... A second view finds 'bad faith' to exist when the creditor's actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures."). Here, Kaplan arguably employed his involuntary petition to circumvent his lack of success over the past eight years in prior litigation in other courts and to avoid the state court Note Action now pending against him. In this context, the question of whether Kaplan filed his involuntary petition in bad faith should be answered based on an objective inquiry into the evidence before me to ascertain whether the petition was filed for an improper purpose.

---

1. All chapter and section references herein are to 11 U.S.C. §§ 101 et seq., unless otherwise noted.

2. *But see Basin Electric Power Cooperative v. Midwest Processing Co.,* 769 F.2d 483 (8th Cir.1985) (discussing at length bad faith in regard to dismissal for failure to meet the number of creditors requirement in § 303(b)(1)).

The evidence leads me to the conclusion that Kaplan filed this involuntary in bad faith. Specifically, the petition was filed by Kaplan as part of a forum shopping litigation tactic to (1) stall the Note Action and (2) provide a new opportunity to litigate to set aside the Settlement after Kaplan's prior litigation efforts to the same end in other courts were unavailing. When other factors discussed below are taken into account, I believe it becomes appropriate to dismiss Kaplan's involuntary petition pursuant to my powers under § 105(a) in conjunction with the Congressional intent as expressed in § 303(i)(2).

*Bad Faith Under § 1112(b)*

█ Section 1112(b) is the usual basis for dismissal of a chapter 11 bankruptcy case on the grounds that it was filed in bad faith. Whereas bad faith analysis under § 1112(b) focuses on the propriety of the debtor in filing its petition, bad faith analysis in the context of a pending involuntary petition under § 303 necessarily looks to the propriety of the petitioning party(s), who may be a creditor or a group of creditors, and who in this instance happens to be one of two 50 percent general partners in the alleged debtor. Therefore, the focus of the analysis in an involuntary case prior to entry of an order for relief in this context normally should be quite different from the analysis applicable in the typical debtor-originated bankruptcy, and a § 1112(b) bad faith analysis usually would not be appropriate in an involuntary case. *But see In re Wedgewood Golf Associates, Ltd.*, 86 B.R. 711, 714–15 (Bankr.M.D.Fla. 1988).

On the other hand, this is not a typical involuntary. Here, a general partner filed the involuntary petition, not a creditor. Thus, it seems that the principles of bad faith analysis as the issue arises under § 1112(b) may be appropriate to the determination of the Motion before me.

█ The Ninth Circuit has definitively established that, under § 1112(b), a chapter 11 case can be dismissed for "cause," including lack of good faith (i.e., bad faith). *In re Marsch*, 36 F.3d 825, 828. The Ninth Circuit view is that the existence of good faith in this context does not to depend on one factor alone, but rather, more appropriately, is to be judged by looking at the totality of circumstances surrounding the case. *Id.* The Ninth Circuit Bankruptcy Appellate Panel has expanded on this concept, as follows:

> To determine whether a debtor has filed a petition in good faith, courts weigh a variety of circumstantial factors such as whether: (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state court.

*In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582–83 (9th Cir. BAP 1995) ("*St. Paul*").

The factors announced in *St. Paul* would seem to support the dismissal of Kaplan's involuntary petition as having been filed in bad faith for the reasons that: (1) Venture has no real assets except its contractual interest in Channel; (2) Venture does not have an ongoing business to reorganize; (3) there are no undisputed, unsecured creditors, since all of such claims appear to be in dispute by one or both partners;[3] (4)

---

3. The debts purportedly owed by Venture to Kaplan are for litigation expenses incurred in the Kaplan District Court Action and the Kap-lan State Court Action. The debts purportedly owed by Venture to Breslow are for costs incurred by Breslow in preparing Venture's

Venture does not have any cash flow to fund a plan, or litigation, or to pay its bills;[4] (5) Venture has no employees; and (6) the case is a quasi-two-party-dispute between the Settlement parties and Kaplan in the FDIC Litigation. These matters already have been adjudicated against Kaplan in his prior litigation in other courts, and the Note Action is capable of prompt adjudication in state court.

■ Additionally, bad faith may be found under § 1112(b) where the debtor has filed bankruptcy as a litigation tactic, e.g., forum shopping. *Id.* at 583; *In re Silberkraus,* 253 B.R. 890, 902–03 (Bankr. C.D.Cal.2000).

As mentioned above, it appears that Kaplan filed this involuntary petition against the alleged debtor as a litigation tactic, after his litigation in other courts was unavailing, and in a forum shopping effort to avoid the latest, still pending litigation in the state court. Therefore, the involuntary petition here should be dismissed pursuant to the principles enunciated by the Ninth Circuit and the Ninth Circuit BAP under § 1112(b) on the basis that Kaplan's petition here was filed in bad faith. Kaplan has failed to offer any convincing evidence or justification to the contrary, other than by asserting his statutory right as a general partner to initiate the involuntary process. I conclude the latter is an insufficient basis to sustain Kaplan's efforts in the face of Kaplan's eight-year prior litigation history involving Venture and the Note.

### *CONCLUSION*

Kaplan's involuntary petition will be dismissed.

## ORDER GRANTING WARREN L. BRESLOW'S MOTION AND DISMISSING INVOLUNTARY PETITION

Based on my Findings of Fact and Conclusions of Law entered herein, Breslow's Motion to Dismiss the involuntary petition herein is granted. The involuntary petition filed by Kaplan with respect to WLB–RSK Venture hereby is dismissed.

IT IS SO ORDERED.

---

tax returns. All of these unsecured debts are in dispute. Breslow has stated that he will not seek payment for costs incurred in preparing Venture's tax returns and surely will dispute the litigation costs incurred by Kaplan on behalf of Venture since Breslow has opposed Kaplan's actions and positions in all the litigation discussed herein.

The fact that Venture does not appear to have any undisputed, unsecured debts but in fact only debts paid directly by Breslow or Kaplan out of personal funds, all of which appear to be heavily disputed between Breslow and Kaplan, would also support a decision of this court to decline to enter an order for relief. Pursuant to § 303(h), there are only two circumstances under which an order for relief can be entered in an involuntary. One of those circumstances, that delineated by § 303(h)(2), is not applicable to this case. The other circumstance, that delineated by § 303(h)(1) is not satisfied due to the fact that there are no discernable undisputed, unsecured debts. To the contrary, the disputes concerning the alleged debts appear to be long-standing and bona fide. Whether the case is dismissed on the basis that it was filed in bad faith or because the court has no factual basis to enter an order for relief, the outcome is functionally the same.

4. At oral argument on Kaplan's motion to appoint a chapter 11 trustee (which I denied in a separate order), Kaplan offered to advance $25,000 to defray the initial expenses of a trustee. I rejected Kaplan's offer as an inappropriate, unpredictable, and inadequate basis to fund the administration of a chapter 11 case.