In re PETROSCIENCES INTERNA-
TIONAL, INC., Alleged Debtor.

Bankruptcy No. 188–10083–7.

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

July 15, 1988.

R. James George, Jr., Graves, Dougher-
ty, Hearon & Moody, Austin, Tex., for Pe-
trosciences, Intern., Inc.

David G. Stubbeman, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, Tex., for Zachry.

Jim K. Choate, Brice & Mankoff, Dallas, Tex., for Bailey G. Choate.

## MEMORANDUM OF OPINION ON DAMAGES FOR FILING A WRONGFUL INVOLUNTARY PETITION

JOHN C. AKARD, Bankruptcy Judge.

On March 11, 1988 Zachry Associates, Inc. (Zachry) filed an Involuntary Petition for relief under Chapter 7 of the Bankruptcy Code against Petrosciences International, Inc. (PSI). After an evidentiary hearing held April 26, 1988, the Court concluded that it should not grant relief. By order entered May 4, 1988, the Court dismissed the Involuntary Petition.[1] At an evidentiary hearing on May 26, 1988 the Court considered the damage issues as well as all remaining matters in the main case and in related Adversary Proceeding No. 188–1019. This opinion is the result of that hearing, and concerns the issue: What damages, if any, should be awarded against a creditor who filed an unwarranted involuntary proceeding?

### Statute

Pursuant to § 303 of the Bankruptcy Code the Court has the power to grant a judgment for damages against the unsuccessful petitioners in an involuntary case (Zachry) in favor of PSI.[2] Section 303 reads as follows:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs;

(B) a reasonable attorney's fee; or

(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

The use of the word "or" in the statute does not indicate alternative remedies. The Court may award all or any combination of the remedies specified. *In re Ramsden*, 17 B.R. 59 (Bankr.N.D.Ga.1981).

### Facts

This case was not prompted by the formation of PSI, but resulted from the social, business, and church relationships of the parties through their membership in the Highland Church of Christ of Abilene, Texas (HCC) and its television and publication division known as the Herald of Truth (HOT). Although often mentioned in the testimony, neither HCC nor HOT were involved in the transactions in question—at least, not in their official capacities.[3]

Marilyn Patterson, at the time a member of HCC, and Fred Cleitt formed PSI in 1984. She is President and he is Chief Executive Officer. Other than one secretary, they have been the only employees of the corporation throughout its existence and have not drawn any salaries from it. They both operated other corporations and businesses related to the oil industry as well as charitable and political activities from the PSI offices. PSI felt it possessed advanced technology to extract quantities of oil and gas in secondary and tertiary

---

1. The Court bifurcated the hearing and instructed the parties on April 26, 1988, that it would consider only the issue of whether an order for relief should be granted against PSI.

2. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

3. The exception is Ms. Patterson's testimony that elders of the church told her the corporation should not sue members of the church because the parties should work out the matters among themselves.

recovery operations. The technology was not patented or exclusive with PSI. PSI secured an option to purchase ten oil and gas leases in Coleman County, Texas (the "CC–1 project") from Precision Drilling, Inc. PSI projected a waterflood for the CC–1 project using a basic waterflood design not tailored to the leases in that project.

Initially Patterson and Cleitt determined they would need $15 million for the CC–1 project. They decided to raise the money from one or two large investors, rather than a public offering. To this end they hired Zachry.[4] Zachry designed logos, letterhead, presentation covers and business cards, prepared an audio/visual tape for showing to prospective investors, and assisted in the preparation of speeches and publicity photographs for PSI from November 1984 through October 1985. One of Cleitt's companies paid a few of the earlier invoices but the bulk of the work, totaling $19,241.04, remained unpaid. At hearing, Zachry asserted that the amount was due. PSI claimed that the parties agreed the obligation would be paid when the funds for the oil and gas project were raised and, since those funds were not yet raised, the obligation was not yet payable.

At hearing, the testimony was that Zachry's collection efforts consisted of periodic telephone calls to PSI, culminating in July 1986 in an attempt to get a note signed both by PSI and Patterson and Cleitt individually. When those efforts were unfruitful, Zachry had an attorney send a demand letter. In response, Cleitt wrote a letter dated September 16, 1986 acknowledging the indebtedness, but stating PSI's position that the indebtedness was not to be paid until the funds were raised. Zachry's files evidenced further telephone conversations with PSI on January 8, 1987 and April 23, 1987. The evidence presented showed no further collection efforts until the Involuntary Petition on March 11, 1988—almost a year after the last telephone contact.

PSI's fund raising efforts did not succeed. The PSI officers testified that in June, 1986, when its option with Precision Drilling Inc. was about to expire, they agreed through Clois Fowler that Fowler and Bailey G. Choate (Choate) would provide $1.9 million to PSI. The funds never materialized and PSI's option on the CC–1 project leases expired. PSI sued Fowler and Choate in the 104th Judicial District Court of Taylor County, Texas for breach of contract and damages (state court suit). Fowler and Choate denied the allegations and filed counterclaims. Attorney Glenn E. Heatherly represented Fowler in the state court suit. Rutledge & Rutledge, Abilene, Texas, and Jim K. Choate of Brice & Mankoff, Dallas, Texas, represented Choate.[5]

Choate is a retired builder/developer, a close personal friend of Fowler, and a friend of Zachry. His contributions to HCC and HOT totaled several million dollars over the past few years. At one time he officed in the HOT building while he was acquiring some land to be used for expansion by HCC.

Choate's interest in the oil and gas leases in Coleman County, Texas was not limited to his dealings with PSI. He purchased a judgment against Cleitt and levied on Cleitt's stock in PSI, which levy was frustrated when the judgment was paid. Subsequently, he purchased liens on oil and gas properties in Coleman County, Texas held by two creditors of Precision Drilling Company, Inc. He attempted to foreclose those liens in Precision Drilling Company, Inc.'s Chapter 11 proceedings but was unsuccessful when a plan of reorganization was approved. Charles Dick Harris, attorney for Precision Drilling Company, Inc., testified at the hearing that Choate asked him if an involuntary petition against PSI would delay the trial of the state court suit. Although Choate denied talking to Harris about the state court suit, the Court finds Harris' testimony credible. Fowler runs

---

4. H.C. Zachry is President of Zachry. He is a member of HCC. Zachry does substantial work for HOT; Zachry's billings to HOT exceeded $1 million per year.

5. The relationship of Bailey G. Choate to Jim K. Choate is not shown in the record.

HOT and is both personally and professionally acquainted with all the parties involved in this matter.

The state court suit was set for trial on Monday, March 14, 1988. The testimony was that there had been a number of continuances in the case and the judge advised the parties that no further continuances would be granted.

On March 3 or 4, 1988 Glenn Heatherly withdrew as Fowler's attorney in the state court suit and another attorney represented Fowler. On March 11, 1988, PSI, Cleitt and Patterson signed a Complete Mutual Release in the state court suit with Fowler, HCC including all of its members, agents, representatives, elders, deacons, ministers and employees and HOT and all of its employees, officers, agents, and representatives (specifically excluding Choate). The release is notable because HCC and HOT were not parties to the state court suit. As a result of the release shortly before noon on May 11, 1988 Fowler paid PSI $15,-000.00.[6]

Immediately upon being relieved as attorney of record for Fowler in the state court suit, Heatherly commenced a course of action which resulted in the filing of the Involuntary Petition. The testimony showed he went to Zachry and suggested that filing an Involuntary Petition would be a good way to collect the indebtedness from PSI.[7] He was aware of the Fowler settlement and suggested the filing of the Involuntary Petition, in part, to trap the funds paid in the Fowler settlement. During the week prior to the filing of the Involuntary Petition, Heatherly conducted an ongoing investigation of PSI. He examined Zachry's file on PSI and decided that the debt was due and owing. However, he did not discuss this account with Logan Cravens, Zachry's Marketing Manager, who had the principal contact with PSI.

Heatherly represented both HCC and Zachry in the past, but not on the PSI matter. He testified that he volunteered to help Zachry, but recorded no time on the matter, had no fee agreement, and did not open an office file on the Zachry v. PSI case.

J. Edward Sartain, an Abilene, Texas, attorney, did regular collection work for Zachry. The PSI debt had not been referred to him. On March 11, 1988, Mr. Holloman of Zachry called Sartain to come to a meeting at 1:00 p.m. that afternoon in Zachry's office. At the meeting Sartain talked to Holloman and Heatherly for approximately 15 minutes. He relied on Heatherly's investigation. He was told that the Involuntary Petition had to be filed that afternoon. He was aware of the state court suit and of the Fowler settlement. H.C. Zachry was out of town and no one contacted him about the matter. Sartain did not discuss the matter with Cravens. Sartain went to his office, prepared the Involuntary Petition against PSI, and filed it at 3:20 p.m. on Friday, March 11, 1988—less than two and one-half hours after he was first advised of the matter. By prior arrangement, Heatherly picked up a file-marked copy of the Involuntary Petition at Sartain's office and delivered it to Rutledge and Rutledge.

On Thursday evening, March 10, Jim K. Choate on behalf of Bailey G. Choate, the remaining Defendant in the state court suit, signed an Application for Removal of the state court suit to the Bankruptcy Court. R.M. Rutledge instructed his brother, William K. Rutledge, to meet an attorney from Dallas with the Application for Removal at the Abilene airport on Friday, March 11. William K. Rutledge picked up the Application for Removal, and returned to his office where Heatherly arrived around 4:30 p.m. with the copy of the Involuntary Petition. William K. Rutledge proceeded immediately to the Federal District Clerk's office and filed the Application for Removal at 5:00 p.m. on March 11, 1988.[8]

6. The testimony indicated that church members raised $15,000.00 to secure the release.

7. Originally Heatherly represented Choate in the state court suit and filed an answer on Choate's behalf. Subsequently, he represented only Fowler in that suit and did not participate in the Fowler settlement.

8. The Application for Removal is Adversary Proceeding No. 188–1019.

During the week ending March 11, the attorneys in the state court suit held ongoing discussions including some held as late as Thursday, March 10. There was no mention made of the potential involuntary petition nor of the possibility of removing the state court suit to the Bankruptcy Court. R.M. Rutledge did not know of the removal until the morning of March 11.

Upon learning of the removal, PSI's attorney took immediate steps to get a remand. The state district judge agreed that if a remand could be secured on Monday, March 14, he would start the state court proceedings on Tuesday. If, however, the trial could not start Tuesday, it would have to be continued because the jury would have to be released. The Abilene Division Bankruptcy Judge was unavailable Monday, March 14, so, with that judge's consent, the PSI attorney secured a hearing on a request for remand before the Honorable Massie Tillman, United States Bankruptcy Judge for the Fort Worth Division. The hearing was held on March 14 and Judge Tillman recommended to the United States District Court that the matter be remanded to the State court. The United States District Judge in Fort Worth declined to hear that recommendation on March 14 because Bankruptcy Rule 9027(e) provides a ten day period in which objections to the Bankruptcy Judge's report and recommendation could be filed. Choate filed objections. The Honorable Eldon B. Mahon, United States District Judge, signed an order entered May 10, 1988 granting remand.

### *Damages*

■ Pursuant to § 303, the Court *may* grant a judgment against Zachry in favor of PSI for costs and/or a reasonable attorney's fee regardless of whether the Petition was filed in bad faith and, if the Petition was filed in bad faith, for any damages proximately caused by such filing and/or punitive damages. From the testimony, it is abundantly clear that this Petition was filed in bad faith. There is no question that Heatherly and the Choates orchestrated the filing to delay the imminent trial scheduled in state court. Zachry, as the petitioning creditor, must bear the damages suffered by PSI.

■ PSI's attorneys submitted statements for fees incurred through May 10, 1988 in the involuntary and the removal proceedings for $48,527.50 and for out of pocket expenses of $10,323.76 for a total of $58,851.26. The Court heard the damages issue on May 26, 1988 and, consequently, additional fees and expenses are involved. *See In re Advance Press & Litho, Inc.,* 46 B.R. 700, 703 (D.C.Colo.1984). Zachry objected to the hourly rate of $225.00 charged by PSI's lead attorney on the grounds that it exceeded the customary rate in Abilene, Texas. PSI's attorney is from Austin, Texas and the rate he charged probably more nearly reflects Austin, Texas rates than of those in Abilene, Texas. Additionally, PSI's counsel listed substantial travel expense and staff overtime. On the other hand, certainly Zachry knew or should have known that the Application for Removal would be filed on the heels of the Involuntary Petition and that, of necessity, PSI's response would be on an expedited basis. Considering all the factors, the Court finds that some reduction is warranted and, therefore, finds the sum of $50,000.00 is reasonable and should be allowed for attorney's fees and expenses. Further, all costs of court will be taxed against Zachry.

In the event Zachry appeals this matter to the United States District Court, PSI will suffer additional damages as attorney's fees for which the Court awards $10,000.00. If this case is appealed to the Fifth Circuit Court of Appeals, the Court awards an additional $10,000.00 for attorney's fees.

■ Cleitt and Patterson said the filing of the Involuntary Petition severely damaged PSI. They stated that PSI would no longer be able to get a bank loan. However, the testimony revealed that PSI had never received a bank loan except by the personal guarantees of the principals. The Court does not find that PSI sustained injury in that regard. Cleitt stated that the work Zachry did was valueless. This statement was in direct conflict with his own letter of September 16, 1986 to Zachry's attorney in which he said: "Zachry Associ-

ates did an outstanding job of preparing a videotape, etc. for us ...."

Cleitt stated that PSI lost its value and because of the filing of the Involuntary Petition sought to recover the $1,000.00 it cost to form the corporation. The evidence indicated that PSI's right to do business had been forfeited at least twice for failure to pay franchise taxes and that it had to secure reinstatement on each occasion. The Court does not consider the filing and subsequent dismissal of an Involuntary Petition any worse for the corporation's image than a public record which shows the corporation did not pay its franchise taxes.

Cleitt asserted that the corporation was damaged in the amount of $30,000.00 per year for his efforts and a like amount for Patterson's efforts and, since the corporation was in business for four years, an award of $240,000.00 in damages was proper. The testimony indicated otherwise. Both Cleitt and Patterson operated numerous other businesses and, apparently, floated in and out of these businesses in various deals depending on the particular situation at the time. Cleitt stated that knowledge was PSI's principal asset. However, with his ability to float from one business to the other, this knowledge was certainly available to other business enterprises in which he was engaged. PSI raised no money from outside sources, had no exclusive patents or processes, and prepared no financial statements. In sum, the Court finds that PSI was not damaged in any way by the filing of the Involuntary Petition. Clearly the only viable asset of PSI, if in fact it is a viable asset, is its claim against Choate. That claim was not wiped out by the filing of the Involuntary Petition. The Court understands that the state court suit is set for trial.

██ With regard to punitive damages, this Court finds that, even considered in the light most favorable to Zachry, this Involuntary Petition was filed in an attempt to use the Bankruptcy Court as a collection mechanism rather than following normal collection mechanisms available through the state court. Seen in the worst light, which this Court feels is the more credible view, the Involuntary Petition was a blatant attempt to forestall the trial of the state court suit. In either case, punitive damages must be awarded to deter future abuse of bankruptcy court processes. Punitive damages may be awarded "even in the absence of or in addition to actual damages." *Advance Press, supra,* at 706; see also *Jaffe v. Wavelength, Inc., (In re Wavelength, Inc.),* 61 B.R. 614 (Bankr.App.Panel, 9th Cir.1985). The Court awards punitive damages as follows:

1. All obligations of PSI to Zachry, including but not limited to Zachry's claim against PSI for $19,241.04, are canceled.

2. The sum of $10,000.00 is awarded to PSI.

ORDER ACCORDINGLY.
DATED: July 15, 1988.[9]

---

**9.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.