**In re ATLAS MACHINE AND IRON WORKS, INC., Alleged Debtor.**

**Bankruptcy No. 91–11448–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Nov. 30, 1995.

H. Jason Gold, Gold & Stanley, P.C., Alexandria, Virginia, for debtor.

James F. Hibey, Verner, Liipfert, Bernhard, McPherson & Hand, McLean, Virginia.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

The instant case requires a ruling on the motion for attorney's fees, costs and punitive damages pursuant to 11 U.S.C. § 303(i) and sanctions under Bankruptcy Rule 9011 filed by the alleged debtor, Atlas Machine and Iron Works, Inc. ("Atlas"), as a result of the filing of an Involuntary Petition in bankruptcy by Bethlehem Steel Corporation ("Bethlehem"), as sole petitioning creditor.

For the reasons set forth herein, the Court awards Atlas its reasonable attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1)(A) & (B). Atlas is granted leave to submit a detailed itemization of its fees and costs incurred in connection with defending the involuntary petition through and including June 28, 1994. We further deny Atlas's request for compensatory damages under 11 U.S.C. § 303(i)(2)(A) for failure to establish any actual damages other than attorneys' fees and costs. Additionally, we award $25,000 in punitive damages under 11 U.S.C. § 303(i)(2)(B) based upon Bethlehem's bad faith filing. Finally, we find that sanctions under Bankruptcy Rule 9011 are warranted against Bethlehem and its counsel in the amount of $1,000 each.

## I. JURISDICTION AND PROCEDURE.

The Court has jurisdiction to determine this matter pursuant to 28 U.S.C. § 1334. It constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C) and (O). We retained jurisdiction following dismissal of the involuntary bankruptcy proceeding for the purpose of awarding costs, attorney's fees and damages. 11 U.S.C. § 303(i); *See In re Glannon*, 153 B.R. 571, 572 (D.Kan.1993) ("there is no question that the bankruptcy court has the authority to retain jurisdiction" for purposes of § 303(i)).

## II. FACTS AND BACKGROUND.

The pertinent facts, background and history of this case are contained in the earlier Opinion of the United States Court of Appeals for the Fourth Circuit. *See Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 711 (4th Cir.1993).

On April 11, 1991, Bethlehem filed an Involuntary Petition in bankruptcy against Atlas, which requested relief under Chapter 7 of the United States Bankruptcy Code ("the Code"). Atlas timely filed a Motion to Dismiss the petition asserting that Bethlehem, as the sole petitioning creditor, could not commence an involuntary proceeding because its creditors numbered more than twelve.[1] Pursuant to the mandate of Federal Rule of Bankruptcy Procedure 1013(a), the contested issues in the involuntary bankruptcy petition were tried on April 29, 1991.

At the April 29, 1991 hearing, Bethlehem argued that in determining the number of creditors of Atlas for purposes of 11 U.S.C. § 303(b), it counted only those creditors whose claims were past due or in default.[2] That is, Bethlehem did not count any creditor's claim whose debt was being paid on time by Atlas. Based on this rather curious position, Bethlehem concluded that only four or five of Atlas's sixty-six trade creditors should be counted.

From the bench, we found that Bethlehem's definition of "claim" was an "improper interpretation" of the Bankruptcy Code, and therefore, it was unreasonable for Bethlehem to conclude that Atlas had fewer than twelve creditors when it filed the petition. We further found that Bethlehem improperly filed the petition for the purpose of collecting a single debt. We entered the order dismissing the involuntary petition with prejudice on May 3, 1991. In our May 3, 1991 order, we ruled:

1. That [Bethlehem] filed the involuntary petition for the purpose of collecting a debt owed to it by [Atlas];

2. That administration of this case in bankruptcy would be of no benefit to other creditors who are being paid currently;

3. That Atlas had twelve or more creditors as of the petition date;

4. That in light of [Bethlehem's] review of [Atlas's] books and records, it was unreasonable for [Bethlehem] to conclude that [Atlas] had fewer than twelve creditors when it filed the petition.

Bethlehem appealed the dismissal to the District Court, and subsequently to the Court of Appeals for the Fourth Circuit. Both courts affirmed this Court's dismissal of the involuntary petition. *See Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709 (4th Cir.1993). Upon review of the record, the Court of Appeals agreed with this Court and the District Court that the definition "claim" on which Bethlehem relied finds no support in either the Bankruptcy Code or precedent. *Id.* at 715 (*citing* 11 U.S.C. § 101(5)(A); *Ohio v. Kovacs*, 469 U.S. 274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985)).

1. The Involuntary petition was filed pursuant to 11 U.S.C. § 303(b)(2). Section 303(b)(1) and (2) provide:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than twelve such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;

11 U.S.C. § 303(b)(1) & (2) (1993). On October 22, 1994, this section was amended to increase the aggregate claim amount to $10,000. This amendment does not apply to case commenced under Title 11 before October 22, 1994. *See* 11 U.S.C.A. § 303(b)(1) & (2) (West Supp.1995).

2. Interestingly, Bethlehem made no averment in its petition as to its belief that Atlas had fewer than twelve creditors. Nevertheless, two of Bethlehem's witnesses testified that they determined that Atlas had only four or five creditors based on their belief that the definition of "creditor" includes only those vendors who are not "paying currently." Michael Stoudt, Bethlehem's internal auditor and a licensed C.P.A., testified that "[he did not] define creditors as people paying currently." Tr. of Apr. 29, at 40. Edith Laver, Bethlehem's in-house counsel, testified that "it [was her] understanding that if an account is current, the vendor does not have a claim ..." Tr. of Apr. 29, at 115.

Additionally, the Court of Appeals rejected both of Bethlehem's two new arguments. *See Atlas Mach. & Iron Works,* 986 F.2d at 715 (noting that Bethlehem abandoned its "rather awkward position" taken in the bankruptcy court and presented "two new arguments" on appeal). On appeal, Bethlehem again argued that only four or five of Atlas's creditors were "eligible" creditors for purposes of the § 303(b) calculation. However, Bethlehem changed the posture of its argument. In its appeal to the District Court, Bethlehem argued for the first time that many of the sixty-six creditors' claims should not be counted because they were the subject of bona fide disputes. *Id.* Bethlehem reasoned that a creditor who is paid on time "would have no actionable claim against Atlas. Therefore, such a claim against Atlas would be subject to a bona fide dispute." *Id.* The Court of Appeals rejected Bethlehem's reasoning as "patently unsupportable." *Id.*

In this same appeal, Bethlehem asserted its second new argument. In short, Bethlehem contended that Atlas's decision to pay other creditors while in default to Bethlehem constituted a preferential transfer under 11 U.S.C. § 547. *Id.* The Court of Appeals dismissed Bethlehem's argument as meritless and without statutory support. *Id.*

Finally, the Court of Appeals held that this Court's dismissal of the involuntary petition with prejudice was proper. Significantly, the Court of Appeals determined that dismissal with prejudice was proper because the record supported a finding of bad faith on the part of Bethlehem. 986 F.2d at 716. The Court of Appeals stated:

> To determine bad faith, a court examines whether a reasonable person would have filed the petition (objective test) as well as the motivations of the petitioner (subjective test). *In re Caucus Distribs., Inc.,* 106 B.R. 890, 924 (Bankr.E.D.Va.1989). Here, the bankruptcy court determined that Bethlehem's decision to file the petition was unreasonable. That conclusion

was amply supported by the evidence, particularly Laver's testimony. Additionally, the bankruptcy court made an implicit finding of subjective bad faith, in that it concluded Bethlehem filed the petition for an improper purpose. In light of Bethlehem's concessions that it filed the petition to collect the debt, the record evidence supports the court's conclusion.

*Id.* at 716.

On May 6, 1992, Atlas filed a motion to recover attorneys' fees and costs and punitive damages pursuant to 11 U.S.C. § 303(i) and Fed.R.Bankr.P. 9011. Trial on Atlas' motion was stayed pending Bethlehem's appeal. The Fourth Circuit issued its opinion on February 22, 1993. After several months of discovery disputes, trial on Atlas's motion was conducted on December 1 and 2, 1993 and evidence was adduced by both parties. We now consider whether Atlas is entitled to recovery of its attorneys' fees and costs as well as compensatory and punitive damages against Bethlehem pursuant to § 303(i) of the Code. We also consider whether the imposition of sanctions under Bankruptcy Rule 9011 is appropriate against Bethlehem and its counsel for their signed assertion that Atlas had less than twelve creditors.

### III. *DISCUSSION.*

 We first address the issue of whether Bethlehem initiated the involuntary petition against Atlas in bad faith. Under the "law of the case" doctrine, the findings of fact and conclusions of law of the Court of Appeals are binding on this Court. *See Capital Investors Co. v. Executors of Estate of Morrison,* 584 F.2d 652, 654 (4th Cir.1978) (court "did not intend for earlier findings and conclusions, which had been affirmed on appeal, to be overturned with no new evidentiary basis for it"). As set forth above, based on the record below, the Court of Appeals held that Bethlehem filed the petition in bad faith.[3] Accordingly, the determination that

---

3. Although this Court did not make an explicit finding on the issue of Bethlehem's bad faith, we took evidence on the issue at the hearing on Atlas's motion to dismiss the petition. The Court of Appeals found the evidence and findings of fact in the record on the issue of bad faith

sufficient to make an explicit determination rather than remand the case. *See In re LaRoche,* 131 B.R. 253, 257 (D.R.I.1991) (on appeal, district court stated that where "the bankruptcy court has gathered evidence on the good faith issue, all of which is on the record, this Court believes that

Bethlehem acted in bad faith is the law of the case.

Nevertheless, at the subsequent trial on Atlas' motion for fees and damages, we allowed the parties to address the issue of Bethlehem's bad faith. The trial testimony revealed no new evidence to contradict the conclusion previously reached by this Court, the District Court and the Court of Appeals that the petition was filed in bad faith. To the contrary, the arguments and testimony offered by Bethlehem further support such a conclusion. The record indisputably reveals that Bethlehem acted with actual knowledge that its petition was defective.

At the evidentiary hearing held on December 1 and 2, 1993, Bethlehem conceded that based upon the decision of the Court of Appeals, its definition of creditor was incorrect. Notwithstanding its concession, Bethlehem continued to attempt to justify its filing the petition as a single creditor by arguing that its definition of claim is only incorrect in this jurisdiction. Thus, Bethlehem urges the Court to deny even an award of costs and fees because its decision to file the petition based upon its incorrect definition of "claim" does not constitute proof of bad faith, but was merely stupidity and error. Certainly stupidity and error are not adequate excuses for invoking the jurisdiction of this Court.

As the Court of Appeals noted, Bethlehem's position finds no support in either the Code or precedent. Bethlehem argues that its definition of "claim" has support in other jurisdictions, and thus, was a good faith attempt to expand the law in this jurisdiction. However, Bethlehem has not cited a single case to support its position. Moreover, Bethlehem has not even attempted to reconcile its narrow definition of "claim" with the Supreme Court's holding that a bankruptcy claim comprises a "broad" category of legal obligations. *Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 707, 83 L.Ed.2d 649

(1985); *see also In re Thomas,* 12 B.R. 432, 433 (Bankr.S.D.Iowa 1981) (definition of claim "could not be broader"); *Kallen v. Litas,* 47 B.R. 977, 982 (N.D.Ill.1985) (definition of claim should be given "broadest possible" meaning); *In re Baldwin–United Corp.,* 48 B.R. 901, 903 (Bankr.S.D.Ohio 1985) (definition of claim is "all encompassing").

Bethlehem also ignores the decisions from this district which offer guidance on the counting of creditors for purposes of §§ 303(b)(1) and (2) of the Code. In *In re Reid,* this Court specifically rejected the so-called *de minimus* rule. 107 B.R. 79, 82 (Bankr.E.D.Va.1989) (Bostetter, C.J.). In *Reid,* the petitioning creditor argued that creditors with small claims should not be counted in involuntary cases. *Id.* We stated that "Congress has not specifically authorized exclusion, and in the absence of any indication that Congress intended this exclusion, we have no authority to engraft it onto those [exceptions] that Congress expressly provided." *Id.; see also In re Fox,* 171 B.R. 31 (Bankr.E.D.Va.1994) (Tice, J.) (relying on *In re Reid,* and holding that creditors having minimal and recurring claims should be treated as creditors for purposes of § 303(b)(1) and (2)).

Furthermore, the testimony of Bethlehem's witnesses did nothing but further undermine their position. The decision to file the involuntary petition was made by four officers and managers of Bethlehem. Edith Laver, Bethlehem's in-house counsel, was in charge of the investigation of Atlas's books and records prior to the filing. Ms. Laver offered testimony suggesting yet another explanation for Bethlehem's determination that Atlas had less than twelve creditors. Ms. Laver testified at the December, 1993 hearing that in defining "creditor" at the April, 1991 hearing as only those vendors whose claims are past due, she was referring to "eligible creditors."[4] However, Ms. Laver, a

---

it has authority to make its own finding of fact."); *see also Betancourt v. Garcia,* 49 B.R. 620, 622 (D.P.R.1985) ("appellate courts need not remand and may make additional findings themselves when the evidence before it is documentary or if all the facts relied upon to support the particular judgment are in the record before the appellate court and are undisputed").

4. Ms. Laver stated, "I believed that an eligible creditor for purposes of joining an involuntary bankruptcy petition, that you had to be overdue; the payment of your account had to be overdue in order for you to be an eligible creditor." Tr. of Dec. 1, at 75.

practicing attorney in this district since 1968, admitted having done no research with regard to such a distinction. Our independent research finds no support for Ms. Laver's definitions of claims and creditors in any context under the Code.[5] It is an understatement to say that Bethlehem has belabored this point.

This is not a case in which the petitioning creditor was "mistaken" as to the number of creditors of the debtor. *See In re Alta Title Co.*, 55 B.R. 133, 136 (Bankr.D.Utah 1985) (noting that § 303(c) and Rule 1003(d) contemplate that one-person petitions might be mistaken as to the number of creditors, and provide a means for curing the defect). This is not even a case in which it was a "close call" as to whether the elements of § 303(b) had been met. *Compare In re Compuhouse Systems, Inc.*, 168 B.R. 305, 310 (Bankr. W.D.Pa.1994) (contention of petitioning creditors that debt was not subject to bona fide dispute, although erroneous, was not manifestly implausible). Nor is it a case where the petitioning creditor did not conduct a proper pre-petition inquiry. *See, e.g., In re Better Care, Ltd.*, 97 B.R. 405, 412 (Bankr. N.D.Ill.1989) (prefiling investigation amount to no more than looking at a treatise and talking to a partner). Rather, in this case, Bethlehem having conducted a thorough pre-petition inquiry, had actual knowledge that Atlas had more than twelve creditors and decided to file anyway.[6]

In *In re Caucus Distributors, Inc.*, this Court adopted the rule that a single creditor who files an involuntary petition with knowl-

edge that a debtor has twelve or more creditors acts in bad faith. 106 B.R. 890, 924–25 (Bankr.E.D.Va.1989) *relying on Basin Elec. Power Co-op. v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir.1985), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). Accordingly, we find that Bethlehem filed the petition in bad faith.

## A. *Section 303(i) Remedies.*

Having determined that Bethlehem filed the involuntary petition in bad faith, we now turn to the appropriate costs, fees and damages to be awarded to Atlas. Atlas requests judgment for attorney's fees, costs and damages under Bankruptcy Code Section 303(i). Section 303(i) governs the award of attorneys' fees and costs and damages resulting from a petition filed in bad faith, including punitive damages when an involuntary petition is dismissed other than on consent of all parties. 11 U.S.C. § 303(i)(1) and (2). Section 303(i) of the Code states:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtors for—
>
> (A) costs; or
>
> (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—

---

5. Ms. Laver's position has, however, been expressly rejected by the Court of Appeals for the Third Circuit in a similar context. In *Paradise Hotel Corporation v. Bank of Nova Scotia*, 842 F.2d 47, 50 (3rd Cir.1988), the Court addressed the issue of whether a fully secured creditor could properly join in an involuntary petition under § 303(b)(1). In determining that a fully secured creditor is eligible under § 303(b)(1), the Court stated:

> We acknowledge that there is some appeal to [debtor's] argument that a creditor whose claim is not in jeopardy should play no role in initiating an involuntary bankruptcy. Nevertheless, we conclude that we should apply the statute as written without engrafting upon it an implied exception. First, we have been unable to find any support for such an exception in the legislative history. Second, the fact that

the text of the statute is broad enough to include secured creditors appears unlikely to have been the product of oversight. 842 F.2d at 50.

6. The testimony revealed that Bethlehem spent two days reviewing records and documents at Atlas's facility. Bethlehem was provided with a computer printout of Atlas's accounts payable aging report which listed more than sixty accounts. Mr. Stoudt and Ms. Laver each examined the original computer printout which contained account numbers and account balances. Although the report did not contain the names of Atlas's vendors, below each account number on the aging report is a line item that reads "total owed."

(A) any damages proximately caused by such filing or—

(B) punitive damages.

11 U.S.C. § 303(i) (1994). In this case, the petition was dismissed on motion of the alleged debtor without the consent of the petitioning creditors.

### 1. Attorneys' Fees and Costs.

■■ An award of attorney's fees, costs and damages under § 303(i) is entirely within the discretion of the Court in light of the totality of the circumstances. In re Fox, 171 B.R. 31 (Bankr.E.D.Va.1994). Although the Code does not require a finding of bad faith as a prerequisite to an award of attorney's fees and costs, the petitioning creditor's bad faith may be taken into account. See In re Reid, 854 F.2d 156, 160 (7th Cir.1988) (concluding that the bankruptcy court may properly employ a prior determination that a petitioner filed in "bad faith" to guide its discretion in imposing costs and fees pursuant to § 303(i)(1)(A) and (1)(B)).

Considering all the facts and circumstances of this case, and in the exercise of our discretion, the award of fees and costs is appropriate here. As discussed, the filing was patently unreasonable. Bethlehem urges the Court to deny even an award of costs and fees because although its actions were "stupid," they were not in bad faith. We disagree. The majority of courts have held that even in the absence of bad faith, the Code allows the assessment of fees and costs against the petitioning creditor. See 11 U.S.C. § 303(i)(1); In re Fox, 171 B.R. at 33 ("the better and apparently prevailing view is that costs and attorneys' fees may be awarded even in the absence of bad faith"). Moreover, we have determined that Bethlehem's improper decision to file the involuntary bankruptcy amounted to bad faith.

■■ Any award of attorney's fees and costs under § 303(i)(1) should be for necessary work performed in defending against the involuntary petition and must be reasonable under all the circumstances. See In re Val W. Poterek & Sons, Inc., 169 B.R. 896, 905 (Bankr.N.D.Ill.1994) (citing In re Wavelength, Inc., 61 B.R. 614, 621 (9th Cir. BAP 1986)); In re K.P. Enterprise, 135 B.R. 174, 178 (Bankr.D.Me.1992). As several Courts have noted, § 303(i) does not set forth standards for fee applications such as those required for a § 330 award. See In re Wavelength, 61 B.R. at 621; In re Poterek, 169 B.R. at 906. As one Court has observed, this is because an award of attorneys' fees under § 303(i)(1) is not professional compensation, rather it is an award of damages. In re Poterek, 169 B.R. at 907. Nevertheless, Courts have required any request for attorneys' fees and costs under § 303(i) be sufficiently detailed so as to clearly identify the nature of the work performed, its reasonable necessity and relevance to defense of the involuntary petition, and the time expended. Id. at 906–07 (citing In re Wavelength, 61 B.R. at 621); see also In re Fox Island Square Partnership, 106 B.R. 962 (Bankr. N.D.Ill.1989); In re Tarasi & Tighe, 88 B.R. 706 (Bankr.W.D.Pa.1988). Although the type of fee application used for § 330 awards is not requisite, we conclude that the requirements under § 330 are an appropriate guideline for proving damages in the form of attorneys' fees under § 303(i)(1).

■■ Additionally, only proven litigation costs actually incurred will be allowed. See In re Poterek, 169 B.R. at 906–07 (compensable costs include cost of transcripts for depositions, hearing on a bond motion, and final arguments and court's remarks); K.P. Enterprise, 135 B.R. at 179 (costs awarded include: facsimile transmissions, travel expenses, postage, long distance telephone calls and photocopying).

Under the circumstances of this case, compensable fees include time expended by Atlas not only in defending the initial filing of the involuntary petition, but also time expended in defending Bethlehem's appeals of the dismissal of the petition and preparing its request for fees, costs and damages. See, e.g., Advance Press & Litho, Inc., 46 B.R. 700, 703 (D.Colo.1984). In its motion, Atlas requests recovery of $69,549.48 in fees and costs incurred through April 16, 1992 as a result of the filing of the petition by Bethle-

hem.[7] Upon review of Atlas's time records, we find that the fees and costs requested are not limited to those incurred in defending the petition.[8] Furthermore, because Atlas's motion was stayed pending Bethlehem's appeal, Atlas's motion only includes time expended through April, 1992. The date of the final hearing in this matter was June 28, 1994.[9] Accordingly, the Court will require counsel for Atlas to submit a new fee application in conformity with this opinion for further approval by the Court.

### 2. Compensatory Damages.

Atlas offered no evidence of any additional actual damages other than attorneys' fees and costs. The testimony of Arthur Miles, president of Atlas, that the difficulties faced by Atlas in its business operations were caused by the filing was unconvincing. Although compensatory damages may include loss of business during and after the pendency of the case, the undisputed evidence indicated that Atlas's business and work force had been on the wane for the past ten years. In fact, Atlas had decreased its work force from approximately 600 to 40 by the date of filing. Atlas failed to proffer any evidence indicating that its loss in business during and after the filing was caused by the actions of Bethlehem. Moreover, argument by counsel about the stigma of bankruptcy is not evidence of any damage proximately caused to Atlas's ongoing business reputation. Consequently, any additional loss of business following the filing of the petition is purely speculative and therefore, is not compensable. See In re Ed Jansen's Patio, Inc., 183 B.R. 643, 644 (Bankr.M.D.Fla.1995) (no actual damages allowed where it is impossible to determine what damages, if any, were suffered as a result of the involuntary; attempt to quantify the amount of sales lost as a result of the involuntary petition would be nothing more than speculation); In re Petrosciences Intern., Inc., 96 B.R. 661, 666 (Bankr.N.D.Tex.1988) (no actual damages where evidence insufficient to show debtor damaged in any way by the filing of involuntary petition); cf. In re Oakley Custom Homes, Inc., 168 B.R. 232, 242–43 (Bankr. D.Colo.1994) (actual damages awarded where evidence supported such award).

### 3. Punitive Damages.

Although Atlas offered no evidence of actual damages, section 303(i)(2)(B) does not require proof of actual damages as a prerequisite to an award of punitive damages. See In re Wavelength, 61 B.R. at 621. An award of fees and costs under § 303(i)(1) and the award of compensatory damages or punitive damages under § 303(i)(2) are not exclusive. These damages may be allowed *alternatively or cumulatively. In re Advance Press*, 46 B.R. at 701 (emphasis added).

An award of punitive damages under § 303(i)(2)(B) is intended to discourage unprincipled creditors from invoking the use of involuntary bankruptcy to serve a purpose at odds with core bankruptcy policy. See K.P. Enterprise, 135 B.R. at 183 (listing cases); see also 22 Am.Jur.2d Damages § 805 (1988) (punitive damages should be sufficient to deter the wrongdoer). Several courts have found that where a petitioning creditor initiates an involuntary petition in bad faith, punitive damages are warranted. See e.g., In re Wavelength, Inc., 61 B.R. 614 (9th Cir. BAP 1986) (punitive damages awarded where petitioner was former director whose sole motive was pressuring another director into withdrawing from debtor's business); In re Fox Island Square Partnership, 106 B.R. 962 (Bankr.N.D.In.1989) (punitive damages and reasonable attorney's fees awarded

---

7. Atlas Ex. H to Mem. in Support of Motion for Attorneys' Fees filed May 6, 1992.

8. For example, counsel for Atlas includes time entries for work done in connection with placing Atlas in a conservatorship. As discussed *infra,* the demise of Atlas's business operations has been a long time coming and there is no evidence that the actions of Bethlehem caused any actual damages with the exception of attorneys'

fees and costs. Accordingly, any award of attorneys' fees and costs will be limited to work performed in connection with defending the petition.

9. Following the December, 1993 trial, the parties spent approximately six months disputing the designation of deposition testimony to be considered by the Court in deciding the instant motion.

where general partners filed involuntary petition against partnership in bad faith); *In re Johnston Hawks Ltd.*, 72 B.R. 361 (Bankr.D. Hawaii 1987), aff'd, 885 F.2d 875 (9th Cir. 1989) (punitive damages where petitioners pre-filing investigation of debtor was "indifferent"); *Camelot, Inc. v. Hayden*, 30 B.R. 409 (E.D.Tenn.1983) (punitive damages against debtor's managers where they knew that they did not qualify as petitioning creditors).

■■■ The general rule is that the amount of punitive damages must bear some reasonable relation to the injury inflicted and its cause. *Matter of Salmon*, 128 B.R. 313, 318 (Bankr.M.D.Fla.1991). Thus, if punitive damages are warranted, the award must be carefully tailored in light of other damages and fees awarded in the case, so that the result implements bankruptcy policy, but is not "unduly harsh." *In re Fox Island Square*, 106 B.R. at 968. Accordingly, punitive damage awards under section 303(i)(2)(B) are generally modest. *See, e.g.*, *In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896 (Bankr.N.D.Ill.1994) ($1,000 in punitive damages); *In re Oakley Custom Homes, Inc.*, 168 B.R. 232 (Bankr.D.Colo.1994) ($75,000 in punitive damages against both the petitioning creditor and its counsel); *Matter of Salmon*, 128 B.R. 313 (Bankr.M.D.Fla. 1991) ($250,000 in punitive damages where petitioner's acts were willful and malicious); *In re Johnston Hawks Ltd.*, 885 F.2d 875 (9th Cir.1989) ($10,000 in punitive damages; award affirmed on appeal); *In re Petrosciences Intern., Inc.*, 96 B.R. 661 (Bankr. N.D.Tex.1988) ($10,000 in punitive damages plus cancellation of approximately $20,000 debt); *In re Wavelength, Inc.*, 61 B.R. 614 (9th Cir. BAP 1986) ($10,000 in punitive damages assessed against each petitioning creditor); *Camelot, Inc. v. Hayden*, 30 B.R. 409 (E.D.Tenn.1983) ($1,000 in punitive damages).

Atlas seeks punitive damages and cancellation of its $16,000,000 indebtedness to Beth-

lehem as a sanction for its bad faith filing. As discussed, Bethlehem's attempt to curtail the requirements for initiating an involuntary bankruptcy proceeding amounted to bad faith. Bethlehem's belief that Atlas had less than twelve creditors was misguided and unreasonable. Further, Bethlehem's initiation of the involuntary bankruptcy as a mechanism to collect a single debt was improper.

On the other hand, Bethlehem's actions were not malicious or vengeful. There is no question that Atlas owes Bethlehem a substantial amount of money, and has for years. The undisputed evidence manifests that Atlas is indebted to Bethlehem in an amount in excess of $16,000,000. Atlas defaulted under its original note to Bethlehem, breached subsequent agreements to pay, thwarted Bethlehem's efforts to foreclose on its collateral and dragged Bethlehem in and out of both state and federal court.[10]

Moreover, Atlas is in no way a stable company. Since the original debt was incurred by Atlas in 1984, as indicated previously, Atlas has reduced its work force from 600 to approximately 40. Although Bethlehem holds a valid lien on all of the real and personal property of Atlas to secure the indebtedness, the evidence indicates that the value of Atlas's assets is only $5,700,000. Bethlehem's officers testified that they were well aware of the value of Atlas's assets, and suspected that the value was dissipating. Notwithstanding Bethlehem's justified frustration and concerns in its attempts to collect its debt from Atlas as detailed above, its invocation of this Court's jurisdiction as a means of collecting its debt was improper.

Atlas contends that Bethlehem's bad faith coupled with Atlas's inability to satisfy its debt justify an award of punitive damages and cancellation of its $16 million obligation. In support of its contention that its indebtedness should be cancelled, Atlas cites *In re Petrosciences International, Inc.*, 96 B.R. 661 (Bankr.N.D.Tex.1988). In *Petrosciences*

---

**10.** In addition to the instant proceedings, Atlas filed an action against Bethlehem in the United States District Court for the Eastern District of Virginia alleging breach of contract, breach of the implied duty of good faith, and tortious interference with business advantage. All counts were decided in favor of Bethlehem or dismissed. Bethlehem filed a counterclaim alleging that Atlas breached its obligations under a settlement agreement. The District Court entered judgment on the debt in favor of Bethlehem and the Fourth Circuit affirmed.

*International,* the court awarded $10,000 in punitive damages and cancellation of all obligations owed by the alleged debtor to the petitioning creditor. However, in that case, the indebtedness was approximately $20,000, an amount bearing some reasonable relationship to the harm suffered.

Even in the light most favorable to Bethlehem, the involuntary petition was filed in an attempt to use the Bankruptcy Court as a collection mechanism rather than following normal collection mechanisms available through the state court. In the worst light, we are faced with Bethlehem's blatant and relentless attempt to circumvent the requirements of the Bankruptcy Code. Therefore, we find that an award of punitive damages is warranted in the amount of $25,000.

### B. *Sanctions under Bankruptcy Rule 9011.*

▮ Atlas also seeks sanctions under Federal Rule of Bankruptcy Procedure 9011 against Bethlehem. Rule 9011 [11] parallels Rule 11 of the Federal Rules of Civil Procedure, which was promulgated to deter abuses in federal civil litigation. *In re Burse,* 120 B.R. 833, 836 (Bankr.E.D.Va.1990); *In re Reveley,* 148 B.R. 398, 407 (Bankr.S.D.N.Y. 1992). Accordingly, courts apply the same standard in interpreting cases under Bankruptcy Rule 9011 as apply in Federal Rule 11 cases.[12] *See In re Palumbo Family Ltd. Partnership,* 182 B.R. 447, 472–74 (Bankr. E.D.Va.1995).

Rule 9011 imposes four requirements on an attorney or party signing a motion or pleading:

(1) There must be a "reasonable inquiry" into both fact and law; (2) there must be

good faith (that is, the paper may not be interposed "to harass"); (3) the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and (4) the lawyer must believe that the complaint is "well grounded in fact."

*In re Poterek,* 169 B.R. at 908 (*citing Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir. 1991)).

▮ The determination of a violation under Rule 9011 is based upon both an objective and subjective standard. *In re Burse,* 120 B.R. at 836. Sanctions under Rule 9011 are appropriate for the filing of an involuntary petition if a petitioning creditor and its counsel failed to make "a reasonable inquiry into the existence of the elements necessary for filing an involuntary petition." *See In re West Side Community Hosp.,* 112 B.R. 243, 259 (Bankr.N.D.Ill.1990). Bad faith is not required, but bad faith certainly warrants sanctions. *In re Poterek,* 169 B.R. at 909. Moreover, if a petition is filed for any improper purpose, it is sanctionable even if it is warranted by existing law and supported by the facts. *In re Century Tile and Marble Inc.,* 152 B.R. 688, 689 (Bankr.S.D.Fla.1993). In determining the legal sufficiency of a position under Rule 9011, a party must investigate the facts and law prior to the signing and submission of a pleading. *In re Better Care, Ltd.,* 97 B.R. 405, 411 (Bankr.N.D.Ill. 1989) (citing *In re McDonald Trucking Co., Inc.,* 76 B.R. 513, 516 (Bankr.W.D.Pa.1987)).

In this case, both Bethlehem and its counsel, James Hibey violated Bankruptcy Rule 9011. Bethlehem both failed to make a "reasonable inquiry" that the petition was well grounded in fact and warranted by existing

---

**11.** Rule 9011 provides, in part:
Every petition ... filed in a case under the Code on behalf of a party represented by an attorney, ... shall be signed by at least one attorney of record ... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that it is not interposed for any improper purpose such as

to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction
...
Fed.R.Bankr.P. 9011.

**12.** Although Federal Rule 11 was amended effective December 31, 1993, Bankruptcy Rule 9011 was not. Thus, the cases interpreting former Federal Rule 11 still apply here.

law or a good faith extension of the law and filed the petition for an "improper purpose." As discussed above, not only was Mr. Hibey's and Bethlehem's assertion that Atlas had fewer than twelve creditors unreasonable, but Mr. Hibey failed to even include an averment in the petition as to the number of Atlas's creditors. As a single petitioning creditor, the number of creditors of the debtor is the threshold requirement. Additionally, as concluded above, Bethlehem filed the petition for the improper purpose of using the bankruptcy court as a mechanism to collect a single debt.

As discussed above, Bethlehem knew that there were insufficient creditors to file the involuntary petition, so they attempted to "contrive" a definition of creditor to meet the requirements of section 303(b). The Court is not convinced that Ms. Laver, Mr. Stoudt and Mr. Hibey each independently believed that the definition of "creditor" or "eligible creditor" included only those vendors with a past due account. Additionally, we cannot even consider that such a definition was a "good faith extension of the law" considering that they failed to cite any authority for such a proposition, ignored the clear language of § 101(5) and did not even attempt to distinguish the well settled case law on the issue. Consequently, Bethlehem violated Bankruptcy Rule 9011.

The signature of James Hibey, attorney for Bethlehem, on the involuntary petition was his certification under Rule 9011 that he had investigated the facts and the law prior to filing the petition. Mr. Hibey certified that the petition was well grounded in fact and warranted by existing law or a good faith extension of the law. However, in his brief filed with this Court, Mr. Hibey conceded that "Bethlehem's conduct in this case was admittedly erroneous—even stupid." Mr. Hibey's statement indicates that he did not make sufficient inquiry prior to filing the petition. Thus, Mr. Hibey violated Bankruptcy Rule 9011.

Bankruptcy Rule 9011 requires the Court to impose a sanction against both Bethlehem and Mr. Hibey. *See* Fed. R.Bankr.Pr. 9011 ("the Court *shall* impose a sanction") (emphasis added). Accordingly, Bethlehem and Mr. Hibey are required to pay $1,000 each as a sanction for their conduct in this proceeding.

**IV.**

For the foregoing reasons, Atlas's motion for attorney's fees, costs, and damages and sanctions is granted in part and denied in part. The Court shall enter an appropriate order.

### *ORDER*

At ALEXANDRIA, in said district, this 30th day of November, 1995.

For the reasons set forth in the Memorandum Opinion dated the 30th day of November, 1995, and entered herein, IT IS HEREBY

ORDERED that the motion of Atlas Machine and Iron Works, Inc. ("Atlas") for attorney's fees, costs and damages pursuant to 11 U.S.C. § 303(i) and for sanctions under Bankruptcy Rule 9011 is hereby GRANTED in part and DENIED in part. It is further

ORDERED that an award and judgment of costs and attorneys' fees is granted in favor of Atlas against Bethlehem Steel Corporation ("Bethlehem") pursuant to 11 U.S.C. § 303(i)(1)(A) & (B). In accordance with the Memorandum Opinion dated November 30, 1995, Atlas is required to submit an itemization of its attorney's fees and costs incurred in connection with the filing of the involuntary petition through and including June 28, 1994 for further approval by the Court. It is further

ORDERED that Atlas's request for compensatory damages pursuant to 11 U.S.C. § 303(i)(2)(A) is hereby DENIED.

ORDERED that an award and judgment, as and for punitive damages, is hereby entered in favor of Atlas against Bethlehem in the amount of $25,000 pursuant to 11 U.S.C. § 303(i)(2)(B). It is further

ORDERED that an award and judgment, as and for sanctions under Bankruptcy Rule 9011, is hereby entered in favor of Atlas against Bethlehem in the amount of $1,000 and against its counsel, James Hibey, in the amount of $1,000 to be paid to the Clerk of

the United States Bankruptcy Court for the Eastern District of Virginia. It is further ORDERED.