**In re CADILLAC BY DeLOREAN
& DeLorean Cadillac, Inc.,
Alleged Debtor.**

**In re Judge Patrick Carroll,
Alleged Debtor.**

Nos. 01–11192, 01–11193.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 25, 2001.

David Arnold, Jeffrey D. Fincun, Cleveland, OH, for Cadillac by DeLorean & DeLorean Cadillac, Inc.

Elizabeth A. McCord, George D. Jonson, Gregory S. Kessler, Montgomery, Rennie & Jonson, Cincinnati, OH, for Judge Patrick Carroll.

## JOINT MEMORANDUM OF OPINION DISMISSING INVOLUNTARY PETITIONS

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Thomas Carnes and Ronald Lutz, accompanied by Matthew Perri, attempted to buy Cadillacs from Cadillac by DeLorean & DeLorean Cadillac, Inc. (DeLorean) by presenting a variety of documents as payment. As a result of those efforts, all three were arrested for attempted theft and forgery. Lakewood Municipal Court Judge Patrick Carroll presided over their preliminary hearing on the criminal charges and bound them over to the county grand jury for further proceedings.

Messrs. Carnes, Lutz, and Perri soon filed these involuntary Chapter 7 bankruptcy petitions against DeLorean and Judge Carroll. Judge Carroll and DeLorean now move to dismiss the petitions on the ground that they are frivolous and without factual or legal foundation. They also ask for sanctions. In response, the three petitioners, who espouse beliefs associated with a group called Redemptionists, contend that they are legitimate creditors of DeLorean and Judge Carroll.

As best as this Court can discern from the vague, rambling information offered, Carnes, Lutz, and Perri start from the belief that the United States declared bankruptcy in 1933, with the Secretary of Transportation serving as receiver. They posit that each of them has a financial account in the range of $1 million created through their birth certificates (with the mother serving as the "informant") to re-

ward them for their worldly efforts. They contend further that they can "redeem" the funds in these accounts; they do so by presenting documents to sellers such as DeLorean and instructing them in turn to present the documents to the Transportation Secretary. Their view is that if DeLorean had followed the right procedure with respect to the documents provided to it, the cars would have been paid for from those accounts. Finally, they conclude that when DeLorean did not follow this procedure, it "converted" the documents, which had the effect of cancelling any debt owed for the cars and instead creating a debt owed to *them* by DeLorean.

The petitioners' argument with respect to Judge Carroll seems to be that had he understood all of this, he would have released them (instead of binding them over to the grand jury) and given them the Cadillacs. They allege that by not doing so, Judge Carroll is in possession of contraband and is guilty of racketeering, false arrest, and false imprisonment.

Having carefully reviewed the file and considered all arguments made in open court, this Court finds that the petitions do not have a sound legal or factual basis and must be dismissed.

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b).

### FACTS [1]

#### The Events at DeLorean's Dealership

Thomas Carnes and Ronald Lutz attempted to buy three cars from DeLorean

---

1. Carnes, Lutz, and Perri agree that the mate-rial facts are not disputed. *In re Cadillac by*

in Lakewood, Ohio, with Carnes signing purchase orders for two cars and Lutz signing a purchase order for one car. Matthew Perri accompanied them to the dealership, but did not sign any documents. Carnes and Lutz attempted to pay for the cars by giving DeLorean various documents. As described above, they argue that if DeLorean had presented those documents to the Secretary of Transportation—as receiver for the United States in bankruptcy—the cars would have been paid for through financial accounts controlled by the receiver. DeLorean apparently did not share their confidence in this scenario and contacted the Lakewood police department. Carnes, Lutz, and Perri were arrested at the dealership and charged in Lakewood Municipal Court with attempted theft and forgery.[2]

### The Court Appearance before Judge Carroll

Carnes, Lutz, and Perri appeared before Lakewood Municipal Court Judge Patrick Carroll for a preliminary hearing on the criminal charges. Based upon the evidence presented, Judge Carroll found probable cause to bind the men over to the county grand jury for further proceedings and indictments.

### The Involuntary Bankruptcies filed against Judge Carroll and DeLorean

Ten days later, Carnes, Lutz, and Perri, as petitioning creditors, filed involuntary Chapter 7 bankruptcy cases against DeLo-

rean and Judge Carroll. They signed the petitions under penalty of perjury. In Case No. 01–11192 against DeLorean, they swore that they were eligible to file the petition under Bankruptcy Code § 303(b), that DeLorean was generally not paying its undisputed debts as they became due, and that within 120 days before the filing of the petition, a custodian was appointed or took possession of its property. They made the same sworn allegations against Judge Carroll in Case No. 01–11193.

They claimed further in the petitions that DeLorean and Judge Carroll owed each of them $152,000 for "Liquidation of assets." In court, Carnes and Perri explained that they calculated the amount of the alleged debt by adding the cars' value to the amount of bond posted with respect to the felony charges and then dividing it by three.

## *PROCEDURAL HISTORY*

The Bankruptcy Code and Rules provide that an alleged debtor named in an involuntary bankruptcy petition may dispute the allegations at the outset. 11 U.S.C. § 303; FED. R. BANKR. P. 1011; FED. R. BANKR. P. 1013. In resolving a challenge to a contested petition, a court may dismiss the petition, enter an order for relief, or take such other action as is appropriate. FED. R. BANKR. P. 1013(a).

Both DeLorean and Judge Carroll filed timely challenges to the petitions, with DeLorean filing a Motion to Dismiss[3] and

*DeLorean & DeLorean Cadillac Inc.,* Case No. 01–11192 (DeLorean Case) Docket 11 ¶ 1; *In re Judge Patrick Carroll,* Case No. 01–11193 (Carroll Case) Docket 16 ¶ 1. These undisputed facts are drawn from the affidavits filed in the DeLorean Case and the Carroll Case, as well as from statements made by Carnes and Perri in open court on March 28, 2001 and May 15, 2001. Carnes and Perri also spoke on behalf of Lutz, who is incarcerated. Parenthetically, the three men requested that this

Court release Lutz from state court custody. This Court has no jurisdiction to address that issue.

**2.** Ohio Revised Code §§ 2913.31 (forgery), 2923.02 (attempt), and 2913.02 (theft).

**3.** The Sixth Circuit recently stated that: "[t]o survive a motion to dismiss ... a complaint must contain either direct or inferential allegations respecting all the material elements to

Judge Carroll filing a Motion for Summary Judgment.[4] The motions are supported by the affidavits of Mark DeLorean, President of DeLorean, and of Judge Carroll. Carnes, Lutz, and Perri filed a document in both cases titled "Ex Parte Order and HEARING" (emphasis in the original) accompanied by an affidavit. The movants filed replies.[5] The Court then held a hearing on the motions.

## THE POSITIONS OF THE PARTIES

Judge Carroll contends that he has judicial immunity against these claims. He also joins in DeLorean's argument that the involuntary petitions do not meet the requirements of Bankruptcy Code § 303. Carnes, Lutz, and Perri claim that Judge Carroll waived his immunity and that they

sustain a recovery under some viable legal theory.... [T]he court must consider as true the well-pleaded allegations of the complaint and construe them in the light most favorable to the plaintiff. *However, [a] court need not accept as true legal conclusions or unwarranted factual inferences.* In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." *Varljen v. Cleveland Gear Co.,* 250 F.3d 426 (6th Cir.2001) (internal citations and quotations omitted) (emphasis added). FED. R. CIV. P. 12(b)(1) and (6) (made applicable by FED. R. BANKR. P. 7012).

If matters outside the complaint are presented and considered when deciding a Rule 12(b)(6) motion, the motion is treated as a motion for summary judgment and all parties must be given a reasonable opportunity to present material pertinent to such a motion. FED. R. CIV. P. 12(b). Here, all parties offered information beyond the complaint which the Court has considered and so the motion will be treated as seeking summary judgment that the petition should be dismissed.

4. Summary judgment is proper if the pleadings, admissions, and affidavits (among other things) show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.

are legitimate creditors of Judge Carroll and DeLorean.

## DISCUSSION

### Judicial Immunity

One of the fundamental principles of our system of justice is that judges are expected to exercise fair and impartial judgment in rendering decisions. In doing so, judges justify the trust that has been placed in them by the voters or the appointing authority. No matter how diligently judges carry out their duties, however, it is a reality of our adversary system that at the end of the day there are winners and losers in the courtroom. And it is a further reality that non-prevailing par-

R. CIV. P. 56(c) (made applicable by FED. R. BANKR. P. 7056). In responding to a properly supported motion, the nonmoving party must show that there is a genuine issue that should be left for trial. The court must view the facts in the light most favorable to the nonmoving party and is not to weigh evidence in deciding the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Sixth Circuit has joined in the universal view that the Supreme Court trilogy of *Anderson, Matsushita,* and *Celotex* "signal[s] to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." *Barrett v. Harrington,* 130 F.3d 246, 251 n. 5 (6th Cir. 1997) (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE, § 2727, at 35 (1996 Supp.)).

5. DeLorean Case Docket 9, 11, 12; Carroll Case Docket 13, 14, 15, 16, 17. *See also* DeLorean Case Docket 10; Carroll Case Docket 12. At the hearing, Carnes and Perri stated that they intended their "Ex Parte Order and HEARING" to be opposition to the motions and the Court will treat it as such rather than as an independent motion.

ties are at times unhappy with decisions entered against them. To protect a disappointed litigant's interest in fair and impartial decision-making in a specific case, our legal system provides the litigant with at least one level of appeal. To protect the public's more general interest in fair and impartial decision-making, we have the doctrine of judicial immunity. *See Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 349 n. 16, 20 L.Ed. 646 (1871).

■ Under the doctrine of judicial immunity, judges are generally immune from suits seeking money damages based on their judicial acts. *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir.1997) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). The doctrine "is justified 'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir.1997) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993)). Stated differently, our society benefits when judges are free to make impartial decisions in each case based on the law and facts at issue without fear of adverse personal financial consequences. Without this immunity, judges might tend to make the least controversial decision or to decide in favor of the most litigious party, in order to reduce the chance of being sued. *See Forrester v. White*, 484 U.S. 219, 226–27, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). This principle of independent decision-making is so important to our system of jurisprudence that judicial immunity even extends to allegations of judicial acts done incorrectly, maliciously or corruptly. *See Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331

(1978); *Bradley v. Fisher*, 80 U.S. at 351, 80 U.S. 335.

■ While the doctrine is quite broad, it is limited in two respects. First, judges do not have immunity for their non-judicial acts. "An act is non-judicial if it is one not normally performed by a judicial officer or if the parties did not deal with the judge in his official capacity." *King v. Love*, 766 F.2d 962, 965 (6th Cir.1985). Second, even where judges perform judicial acts, they do not have immunity if they act without any jurisdiction. This occurs when judges act on matters outside the subject matter of their courts, as, for example, where a probate court holds a criminal trial. *Stump v. Sparkman*, 435 U.S. at 356–57, 98 S.Ct. 1099. "Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Barnes v. Winchell*, 105 F.3d at 1122.

■ The doctrine applies to all judges, whether they sit on a court of general or limited jurisdiction. Municipal court judges, who preside over courts of limited jurisdiction, are protected by this immunity. *Barnes v. Winchell*, 105 F.3d at 1122; *King v. Love*, 766 F.2d at 966. A party claiming judicial immunity has the burden of showing that immunity is warranted. *Barnes v. Winchell*, 105 F.3d at 1115 (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. at 432, 113 S.Ct. 2167).

■ In this case, Judge Carroll, a Lakewood Municipal Court judge, held a preliminary hearing in that court with respect to alleged criminal acts committed by Carnes, Lutz, and Perri in Lakewood. He unquestionably had subject matter jurisdiction to do so. *See* Ohio Rev.Code. §§ 1901.20(B)[6] and 1901.13. Despite this,

---

**6.** This section provides that "[t]he municipal court has jurisdiction to hear felony cases committed within its territory. In all felony cases, the court may conduct preliminary

Carnes, Lutz, and Perri argue that Judge Carroll waived his judicial immunity by entering into a commercial contract. The Court interprets this (perhaps too generously) as an argument that Judge Carroll is not entitled to judicial immunity because he was not acting in his judicial capacity in his interactions with them. If this is the argument, there is no legal or factual basis for it. The only connection between Judge Carroll and these men is that they appeared in front of him in court for a preliminary hearing. Judge Carroll then made a legal ruling based on the evidence presented. Presiding in open court over a dispute, and ruling on that dispute based on the evidence, is the quintessential example of a judge acting in a judicial capacity. *See Forrester v. White*, 484 U.S. at 227, 108 S.Ct. 538 ("When applied to the paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court, the doctrine of absolute judicial immunity has not been particularly controversial."); *Barnes v. Winchell*, 105 F.3d at 1116 (noting that actions taken to adjudicate disputes between parties within the court's jurisdiction are judicial acts).

Carnes, Lutz, and Perri, dissatisfied with Judge Carroll's decision to bind them over to the grand jury, are attempting through this involuntary bankruptcy proceeding to collect money from him based on that decision. In making that decision, however, Judge Carroll acted in his judicial capacity over a matter within his jurisdiction. As a result, he is entitled as a matter of law to judicial immunity for his acts and is not liable to Carnes, Lutz, or Perri for money damages relating to them. Summary judgment will, therefore, be granted in favor of Judge Carroll dismissing the involuntary petition filed against him.

## 11 U.S.C. § 303

■ DeLorean, joined in the alternative by Judge Carroll, argues that the involuntary petitions should be dismissed because Carnes, Lutz, and Perri are not eligible to file them under Bankruptcy Code § 303. That section provides that an involuntary bankruptcy petition may be commenced by creditors holding claims against the alleged debtor that are not contingent or the subject of a bona fide dispute.[7] The Bankruptcy Code defines a "claim" as a:

> ... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

hearings and other necessary hearings prior to the indictment of the defendant or prior to the court's finding that there is probable and reasonable cause to hold or recognize the defendant to appear before a court of common pleas and may discharge, recognize, or commit the defendant." Ohio Rev.Code § 1901.20(B).

7.  (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dis-

pute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; [or]

> (2) if there are fewer than 12 such holders ... by one or more of such holders that hold in the aggregate at least $10,775 of such claims[.]

11 U.S.C. § 303(b)(1) and (2). The adjustments to the dollar amounts made under 11 U.S.C. § 104(b) on April 1, 2001 do not apply to these cases because they were filed before that date. 11 U.S.C. § 104(b)(3).

11 U.S.C. § 101(5)(A). As a matter of law, Carnes, Lutz, and Perri do not come within the terms of § 303 because they do not meet the threshold requirement that they hold claims against DeLorean and Judge Carroll.

At the outset, the Court notes that Perri did not enter into any purchase order with DeLorean. He does not, therefore, have any claim against DeLorean based on any agreement to purchase a car.

Additionally, Carnes and Lutz do not have a claim against DeLorean even though they did sign purchase orders. The Court acknowledges that Carnes and Lutz, together with Perri, contend that the United States declared bankruptcy, that the Transportation Secretary serves as receiver, and that certain financial consequences flow from those events, including the creation of claims in their favor against DeLorean. Having acknowledged their position, however, the Court rejects it, as have all other courts considering similar arguments. *See, for example, United States v. Greenstreet,* 912 F.Supp. 224, 228 (N.D.Tex.1996) (describing as "bizarre", defendant's theory that the American system of currency is illegal and unconstitutional based in part on a supposed national bankruptcy). *See also, In re Hale,* 196 B.R. 122 (Bankr.E.D.Ark.1996) (collecting cases relating to tax protesters).

Carnes, Lutz, and Perri did not cite any cases or statutes that support their bankruptcy/receiver theory and the Court has not found any either. The legal-looking citations in their papers are misleading. They do not refer to any relevant law, but instead point the reader to "laws" that never existed, to laws that may have existed at one time but are no longer in effect, or to laws that exist but do not provide any support whatsoever for the proposition for which they are cited. This leads the Court to conclude that the United States did not declare bankruptcy in 1933 (or at any other time) and that the Transportation Secretary does not serve as its receiver. Any legal argument based on that factual premise does not warrant further attention. Additionally, leaving the bankruptcy/receiver scenario aside, the factual interpretation offered by Carnes, Lutz, and Perri as to what happened at the DeLorean dealership turns reality on its head: they are the ones who owed money to DeLorean to pay for the cars; DeLorean did not owe money to them. Because the petitioners' legal theory is not supported by the facts or the law, Carnes, Lutz, and Perri do not hold claims against DeLorean and are not eligible to file an involuntary petition against it.

Similarly, Carnes, Lutz, and Perri do not hold claims against Judge Carroll that would make them eligible to file an involuntary petition against him. As found above, Judge Carroll is immune from any personal liability related to his judicial acts and so he does not owe a debt arising out of his actions. Even if he did not have judicial immunity, Carnes, Lutz, and Perri do not hold claims against Judge Carroll within the meaning of § 303 for the same reasons discussed above with respect to DeLorean, and they are not eligible to file an involuntary petition against him.[8]

The petitions against both DeLorean and Judge Carroll are deficient in at least two other ways. First, although Carnes, Lutz, and Perri stated under penalty of perjury that DeLorean and Judge Carroll were not paying their just debts as they

---

**8.** DeLorean and Judge Carroll additionally and alternatively argue that even if the petitioners hold claims against them, the claims are the subject of a bona fide dispute and cannot, therefore, be the basis for these involuntary petitions. It is not necessary to address that issue in light of the conclusion that these petitioners do not hold any claims at all.

became due, there was no evidence or even suggestion that this is accurate. And second, although they swore that a receiver had been appointed for both DeLorean and Judge Carroll, Carnes and Perri admitted in court that this is not true.

█ In sum, simply saying that DeLorean and Judge Carroll owe money to Carnes, Lutz, and Perri does not make it so. And the mere act of filing involuntary petitions against DeLorean and Judge Carroll does not mean that there are legitimate grounds to do so. Carnes, Lutz, and Perri do not hold claims that make them eligible to file either of these involuntary bankruptcy petitions. When individuals file an involuntary petition without being eligible to do so, the appropriate remedy is to dismiss the petition. Since the individuals who filed these petitions do not have a sound basis for the filings, both DeLorean and Judge Carroll are entitled to summary judgment as a matter of law that the petitions must be dismissed.

### FURTHER BRIEFING ON SANCTIONS REQUESTS

DeLorean and Judge Carroll reserved the right to request sanctions against Carnes, Lutz, and Perri. Any motion for sanctions shall be filed by **June 8, 2001,** any brief in opposition shall be filed by **June 18, 2001,** and any reply brief shall be filed by **June 25, 2001.**

### CONCLUSION

For the reasons stated, Judge Patrick Carroll's Motion for Summary Judgment is granted and DeLorean's Motion to Dismiss (as joined in alternatively by Judge Carroll and analyzed as a motion for summary judgment) is also granted. Both involuntary Chapter 7 petitions are dismissed.