**In re CADILLAC BY DeLOREAN & DeLOREAN CADILLAC, INC., Alleged Debtor.**

**In re Judge Patrick Carroll, Alleged Debtor.**

**Nos. 01–11192, 01–11193.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Aug. 9, 2001.

David Arnold, Jeffrey D. Fincun, Cleveland, OH, for Cadillac by DeLorean & DeLorean Cadillac, Inc.

Elizabeth A. McCord, Gregory S. Kessler, Montgomery, Rennie & Jonson, Cincinnati, OH, for Judge Patrick Carroll.

Matthew Perri, North Olmsted, OH, pro se.

Thomas Carnes, Garfield Heights, OH, pro se.

Ronald Lutz, Rancho Santa Margarita, CA, pro se.

### JOINT MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Following their arrest for attempted theft and forgery at the Cadillac by DeLorean dealership, and after being arraigned and bound over on those charges by Lakewood Municipal Court Judge Patrick Carroll, Thomas Carnes, Ronald Lutz, and Matthew Perri ("Petitioners") filed involuntary Chapter 7 bankruptcy petitions

against DeLorean and Judge Carroll. Because the statements in the petitions were not true, and because Judge Carroll was protected by judicial immunity, this Court granted summary judgment to DeLorean and Judge Carroll and dismissed the petitions. *In re Cadillac by DeLorean,* 262 B.R. 711 (Bankr.N.D.Ohio 2001).

DeLorean and Judge Carroll now move for sanctions under 11 U.S.C. § 303(i) and Federal Rule of Bankruptcy Procedure 9011.[1] Asserting that Petitioners' filing was unreasonable and done in bad faith, DeLorean asks for costs and attorneys' fees, as well as compensatory and punitive damages. Judge Carroll requests costs, attorneys' fees, and punitive damages.

For the reasons stated below, the Court grants DeLorean's motion in part, awarding costs, and attorneys' fees under § 303(i)(1), as well as punitive damages under § 303(i)(2)(B). The Court denies DeLorean's request for compensatory damages because there was insufficient evidence to support the claim. Judge Carroll's motion is granted under § 303.

### *JURISDICTION*

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b).

### *FACTS*

These Chapter 7 filings have their origins in Petitioners' belief that the United States filed for bankruptcy in 1933 and that the Secretary of Transportation serves as its receiver. Under this theory, each petitioner can pay for goods by creating papers and presenting them to merchants, who are in turn to present the documents to the Secretary for payment. Payment is to come from an account somewhere that was created at each petitioner's birth and now totals about $1 million.

When two of the Petitioners (accompanied by the third) tried to buy Cadillacs from DeLorean with such papers, they were arrested at the DeLorean dealership, charged with attempted theft and forgery, arraigned before Judge Carroll, and bound over by him to the county grand jury for further proceedings.

Ten days later, Petitioners filed the involuntary petitions at issue here, claiming that DeLorean and Judge Carroll owed them money. In these filings, Petitioners certified that:

1. they were eligible to file the petitions under Bankruptcy Code § 303(b);

2. DeLorean and Judge Carroll were not paying their debts as they became due; and

3. within 120 days before the filing of the petitions, a custodian was appointed or took possession of DeLorean and Judge Carroll's property.

Their justification for thinking that DeLorean and Judge Carroll owed them money appears to be this: in their view, DeLorean had an obligation to present their papers to the Secretary for redemption through the birth accounts. By failing to do so, DeLorean converted the papers, the consequence of which is that DeLorean was required to give the cars to Petitioners without any payment. When DeLorean did not turn over the cars, they somehow transformed into contraband. Judge Carroll became a creditor of Petitioners, in their view, because he wrongly failed to release them from the criminal charges.

---

1. Case No. 01–11192 (Docket 17, 20); Case No. 01–11193 (Docket 22, 23, 24, 27, 28).

In dismissing both petitions, this Court held *inter alia* that Petitioners' claims were factually and legally unsubstantiated, Petitioners were not eligible to file the petitions because the alleged debtors did not owe them money, and the doctrine of judicial immunity precluded them from filing an involuntary proceeding against Judge Carroll. *In re Cadillac by DeLorean.*

DeLorean and Judge Carroll then filed timely motions for sanctions supported by detailed records of legal services and costs relating to these cases. Nothing was filed in opposition to the motions. Nevertheless, the Court held an evidentiary hearing on notice to all parties. Carnes and Perri attended, but Lutz did not.

Mark DeLorean, President of DeLorean, testified at the hearing that shortly after Petitioners were arrested, he received a registered letter telling him that if he did not release the Cadillacs, a Chapter 7 involuntary bankruptcy case would be filed against him. The letter, which had signature lines for Lutz and Carnes,[2] stated further that if the "men in custody" were not released, articles would be published on the internet that DeLorean and Judge Carroll were using contraband [i.e., the Cadillacs] to launder drug money, with copies to the IRS and the United States Attorney General, among others. The letter concluded: "Please advise us as to how, when, and where the property will be released to us. You have 24 hours to comply with our demand."

Two days later, Petitioners filed this Chapter 7 against DeLorean, as well as the one against Judge Carroll. The DeLorean filing, which was publicized in a local newspaper, caused consternation and confusion at DeLorean. Employees needed to be reassured that the dealership was on sound financial footing. Friends, acquaintances, and potential customers called to find out what was going on. Existing customers asked whether their warranties would be honored and their vehicles would be serviced. Various members of the media requested information about the filing. In Mr. DeLorean's opinion, the DeLorean name, which stands for honesty and integrity after 25 years in business, was damaged by the involuntary filing. He did not, however, have any concrete examples of lost business or damage to the company's goodwill.

At the hearing, Carnes admitted that he did not make any inquiry into the facts before filing the petitions and that the statements made in the petitions were not true. Although Carnes said that the filings were Petitioners' "only recourse," he was not able to explain what he meant by this statement. Perri, when called to testify as if on cross-examination, invoked his Fifth Amendment privilege against self-incrimination. The Court inquired if either Carnes or Perri wished the Court to consider their financial situation in determining the sanctions issue. Both declined the opportunity.

### THE POSITIONS OF THE PARTIES

Judge Carroll argues that Petitioners filed the involuntary bankruptcy case against him in bad faith in retaliation for his adverse ruling in the state court criminal proceeding, which supports an award of attorneys' fees, costs, and punitive damages under § 303(i). In the alternative, he

---

**2.** The Court finds that Lutz signed and sent this letter. *See* FED.R.EVID. 901(a) and (b)(3). This conclusion is based on a comparison of the signature, content, and format of this letter to the petition and other filings made by Lutz in these cases. *See* Case No. 01–11192 (Docket 10, 11); Case No. 01–11193 (Docket 12, 16). The letter, which shows malicious intent, is an admission against interest. FED R.EVID. 801(d)(2).

moves for an award of costs and attorneys' fees under Bankruptcy Rule 9011 because Petitioners' filing was unreasonable and without any legal or factual basis.

Similarly, DeLorean claims that Petitioners filed against DeLorean to retaliate for pressing criminal charges against them and asserts that sanctions will deter others from such unwarranted actions in the future. DeLorean asks for attorneys' fees and costs under § 303(i) or, alternatively, under Bankruptcy Rule 9011. DeLorean also moves under § 303(i) for compensatory damages for harm to its reputation in the community, as well as punitive damages.

## *DISCUSSION*
### I. 11 U.S.C. § 303(i)

■ The filing of an involuntary bankruptcy petition is, to say the least, a serious matter. Such a filing is a public statement by creditors that the alleged debtor is in enough financial difficulty that the power of a federal bankruptcy court is appropriately invoked to force the debtor to address the problems. In a commercial setting, an involuntary filing may have a number of consequences, ranging from plummeting employee morale, to lost customers, credit problems, and damage to a businesses' reputation. In a filing made against an individual, many of the same concerns exist, coupled with embarrassment on both a personal and a professional level. Because of this, "[t]he filing of an Involuntary Petition should not be lightly undertaken. Even the good-faith filing of such a petition creates onerous circum-

stances for a debtor." *In re Advance Press & Litho, Inc.,* 46 B.R. 700, 702 (Bankr.D.Colo.1984).

■ While Congress recognized that filing an involuntary bankruptcy case is sometimes necessary and appropriate, it also recognized the harm that can be caused by an unjustified filing. An alleged debtor who is subjected to an unjustified filing can move to dismiss the petition and, under certain circumstances, be awarded sanctions. 11 U.S.C. § 303(i).[3] Sanctions are potentially available under this section if three conditions are met: the court dismissed the involuntary petition, the dismissal was not based on consent of the parties, and the alleged debtor preserved the right to recover under the statute. *See In re R. Eric Peterson Constr. Co.,* 951 F.2d 1175, 1179 (10th Cir.1991). In this case, all three elements are satisfied.

■ Once this standard is met, a decision as to whether to issue sanctions rests within the court's discretion. *In re Mundo Custom Homes, Inc.,* 179 B.R. 566, 569 (Bankr.N.D.Ill.1995) (citations omitted). If the court determines that sanctions should be imposed, the court also has broad discretion in fashioning the appropriate sanction. Bankruptcy Code § 303 identifies potential sanctions as costs, attorneys' fees, compensatory damages, or punitive damages. An award of compensatory or punitive damages, however, can only be made if the court finds that the petition was filed in bad faith. The court is not limited to choosing just one sanction, but may instead combine these remedies in

---

**3.** Section 303(i) reads:
 If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
 (1) against the petitioners and in favor of the debtor for—

 (A) costs; or
 (B) a reasonable attorney's fee; or
 (2) against any petitioner that filed the petition in bad faith, for—
 (A) any damages proximately caused by such filing; or
 (B) punitive damages.

such manner as the facts warrant. *Id; see also* 11 U.S.C. § 102(5). The alleged debtor carries the burden of proving the nature and extent of the damages. *See In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 101 (Bankr.S.D.Fla.1981).

### A. *Costs and Attorneys' Fees Under § 303(i)(1)*

 Courts have construed and applied § 303(i)(1) as a "fee-shifting" statute, designed to transfer the costs of litigating the action to the nonmoving party. *See Keiter v. Stracka,* 192 B.R. 150, 160 (S.D.Tex.1996) (citations omitted). When determining whether to award costs and fees, courts examine the totality of the circumstances. *In re Fox,* 171 B.R. 31, 33 (Bankr.E.D.Va.1994). More specifically, courts weigh such factors as the reasonableness of petitioners' actions, petitioners' motives and objectives, and the merits of petitioners' view that filing was appropriate. *See In re K.P. Enter.,* 135 B.R. 174, 177 (Bankr.D.Me.1992). An award of costs and fees does not require a showing of bad faith, but bad faith may be taken into account. *Camelot, Inc. v. Hayden,* 30 B.R. 409, 411 (E.D.Tenn.1983); *In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. 796, 802 (Bankr.E.D.Va.1995).

In these cases, the questions of whether Petitioners' actions were reasonable and whether there is merit to their view that filing was appropriate are best considered together. Petitioners did not offer a convincing explanation at any point in the proceedings to support the notion that these were legitimate filings. Carnes testified at the hearing, but without providing any reasonable explanation of Petitioners' joint actions. Lutz did not attend the hearing, while Perri attended, but invoked his constitutional right against self-incrimination.[4]

In fact, Petitioners' actions in filing the involuntary petitions were patently unreasonable, starting with the faulty legal premise that the United States declared bankruptcy in 1933 and has a receiver. The laws cited by Petitioners to support this position are for the most part either fictitious (as, for example, 46 U.S.C. § 1247) or irrelevant (as, for example, § 2 of the Shipping Act of 1916 (defining corporate citizenship for purpose of transferring shipping vessels); 31 U.S.C. § 5118(2)(d) (authorizing payment by the Government only through designated money); 26 U.S.C. § 7701 (defining terms in the Internal Revenue Service Code); 15 U.S.C. § 1601 (Truth in Lending Act) and the related Regulation Z (requiring disclosures in connection with the extension of credit); and 50 App.U.S.C § 5 (addressing Presidential powers in wartime)). Beyond the lack of legal foundation for the petitions, Petitioners' factual interpretations of the relevant events "turned reality on its head." *In re Cadillac by DeLorean,* 262 B.R. at 718. Petitioners attempted to buy cars from DeLorean, and yet they claimed that DeLorean owed *them* money. These factual and legal positions have no merit and are unreasonable.

Petitioners' motives and objectives in filing the involuntary petitions are also suspect. Timing is significant on this issue. Petitioners filed these cases just 10 days

---

**4.** "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]" *Baxter v.*

*Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). However, that adverse inference "may not be the sole basis for a finding of liability; independent corroborative evidence of wrong-doing must be shown." *In re Fischer,* 259 B.R. 23, 44 (Bankr.E.D.N.Y.2001) (citations omitted).

after Judge Carroll held the preliminary hearing on the criminal charges brought against Petitioners based on the incident at the DeLorean dealership. That quick sequence of events indicates that Petitioners' motive in filing these involuntary bankruptcies was revenge, not the adjustment of debts. This conclusion is supported by the fact that Petitioners stated under oath in their petitions that the alleged debtors were not paying their debts and that receivers had been appointed, even though none of that was true.

The issues of motive and Petitioners' explanation (or lack thereof) for their actions are related to the question of whether Petitioners acted in bad faith. While bad faith is not a prerequisite to an award of fees, it is a relevant consideration. The term bad faith is not defined by the Code. As a result, courts have used different standards to determine whether a petition was filed in bad faith for purposes of § 303(i). These approaches include: (1) an "improper use" test under which bad faith is found based on creditor attempts to obtain disproportionate advantage by means of an involuntary filing; (2) an "improper purpose" test under which bad faith is found when an involuntary filing is made based on ill-will, malice, or a desire to embarrass or harass the alleged debtor; and (3) a bad faith inquiry based on the standards set forth in Bankruptcy Rule 9011. *See generally, Lubow Mach. Co. v. Bayshore Wire Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105–06 (2d Cir.2000); *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1501–02 (11th Cir.1997).

 The Sixth Circuit has not addressed this issue. On issues of good faith and bad faith, however, the Sixth Circuit generally looks to the totality of the circumstances. *See Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 860 (6th Cir.

1988); *see also Industrial Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1127 (6th Cir.1991); *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030, 1033 (6th Cir.1988). This Court, therefore, adopts that as the appropriate test. "There is a presumption of good faith in filing, and the burden is on the alleged Debtor to show bad faith by the Creditors." *In re Mundo Custom Homes, Inc.*, 179 B.R. at 569.

 In reviewing all of the circumstances, the Court has considered the possibility that Petitioners genuinely believe what they say. Even if they sincerely viewed their claims as valid, however, a blatant disregard for facts can still constitute bad faith. "The filing of a petition may be sanctionable for bad faith under § 303(i)(2) when a petitioner disregards facts which have an impact on the validity of their petition." *In re Val W. Poterek & Sons, Inc.*, 169 B.R. 896, 905 (Bankr. N.D.Ill.1994) (citations omitted). These Petitioners disregarded the fact that the United States is not in bankruptcy, as well as the fact that the petitions they signed had untrue statements in them.

The extreme illogic of Petitioners' claims also contributes to a finding of bad faith. Although Petitioners did not have the assistance of counsel, even a cursory lay examination of the facts would have militated against the filing of these petitions.

 The timing of the filings, the lack of legal support for the filings, the blatant disregard for relevant facts, the improper purpose behind the filings, and Petitioners' failure to justify their actions, all lead the Court to find that these were bad faith filings.

Based on all of the circumstances, the Court concludes that the shifting of costs and attorneys' fees to Petitioners under § 303(i)(1) is warranted.

### B. *Calculating Costs and Attorneys' Fees Under § 303(i)(1)*

■ When professionals are paid fees and costs for services they render to the debtor and the bankruptcy estate in a legitimate bankruptcy filing, those awards are governed by Bankruptcy Code § 330.[5] The Sixth Circuit uses the lodestar analysis for calculating fees under that section. *In re Boddy,* 950 F.2d 334, 337 (6th Cir. 1991). This is also an appropriate method for calculating fees under § 303 when fees are awarded as a sanction. *See In re Landmark Distribs. Inc.,* 195 B.R. 837, 848–49 (Bankr.D.N.J.1996).

Under this analysis, the court first calculates the "lodestar" sum by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *In re Boddy,* 950 F.2d at 337. The court may then, in its discretion, consider further factors such as "the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area." *Id.* at 338. This additional analysis is often unnecessary, however, because "the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked." *Id.*

■ As is true of all fee awards, the award in an involuntary case is limited to professional services that are both necessary and reasonable. In this context, necessary and reasonable activities include time spent responding to the initial invol-

untary petition, defending any appeals of the dismissal of the petition, and preparing the sanctions request. *See In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. at 803. Costs must be proven litigation costs actually incurred. *See In re K.P. Enter.,* 135 B.R. at 179 (accepting compensable costs as facsimile transmissions, travel expenses, postage, long distance telephone calls, and photocopying).

Judge Carroll requests $10,310.25 in costs and attorneys' fees, calculated according to the lodestar method and supported by detailed time records.[6] Judge Carroll's two attorneys billed at hourly rates of $125.00 and $145.00, which are reasonable rates considering customary practice and the type of services rendered. The costs outlined—travel expenses, federal express, fax fees, photocopying, telephone costs, and Westlaw charges—are also necessary and reasonable. The Court, therefore, grants Judge Carroll's motion for costs and attorneys' fees totaling $10,310.25.

■ DeLorean seeks $19,459.08 in costs and attorneys' fees, again calculated under the lodestar method. DeLorean also provided a detailed record outlining the amount and relevance of its attorneys' work in relation to the bankruptcy proceeding. DeLorean was represented by two partners from the same firm, both of whom charge $250.00 an hour and both of whom did legal research and writing. Ordinarily, this Court expects that legal work will be done by the lawyer in a firm with the lowest billing rate who is competent to do that particular task. Research of the

---

**5.** Section 330 provides in part:
... the court may award to ... a professional person employed under section 327 or 1103—
(A) reasonable compensation for actual, necessary services rendered by the ... professional person ... and

(B) reimbursement for actual, necessary expenses.
11 U.S.C. § 330(a)(1).

**6.** *See* Exhibit A to Judge Carroll's motion for sanctions and the supplementary petition.

type needed in this case is generally best done by a lawyer whose rate is significantly lower than $250.00. The circumstances here, however, warrant departing from that general principle because DeLorean—caught off-guard by the frivolous filing—needed immediate and ongoing assistance from both its regular corporate counsel and experienced bankruptcy counsel who could help it to understand and respond, in court and in the community, to the involuntary petitions. Under these unusual facts, the services of both partners were necessary and reasonable. The costs incurred—telecopying, messenger service, photocopies, and telephone costs—are also reasonable. The Court, therefore, awards DeLorean the requested $19,459.08 in costs and attorneys' fees.

### C. *Compensatory and Punitive Damages Under § 303(i)(2)*

#### 1. Compensatory Damages

In addition to costs and fees, a court may award compensatory and/or punitive damages where, as here, the alleged debtors prove that the involuntary bankruptcy petition was filed in bad faith. Regarding compensatory damages, DeLorean claims that the involuntary bankruptcy proceeding caused customer anxiety about the dealership's financial status and required management and employees to devote time to reassuring those who were concerned. More generally, DeLorean argues that compensatory damages are necessary to negate the damage done to its business reputation.

■■■■ Lost profits as well as harm to business reputation are compensable under the statute. While we can safely assume that filing an involuntary bankruptcy petition against a business does not help its reputation and probably harms it, harm of that nature must be proven through more than general testimony about reaction within the community. DeLorean's contention that its reputation has been damaged was supported solely by general testimony from DeLorean's president about phone calls and inquiries, without evidence of any particular incidents proximately causing damage. This is insufficient to show damage to DeLorean's goodwill. *See in re Atlas Mach. and Iron Works, Inc.*, 190 B.R. at 804 ("[A]rgument by counsel about the stigma of bankruptcy is not evidence of any damage proximately caused to [the alleged debtor's] business reputation."). Similarly, DeLorean did not offer evidence of specific business losses resulting from Petitioners' filing and did not identify a satisfactory method of quantifying any such damages. The request for compensatory damages is, therefore, denied.

#### 2. Punitive Damages

■■■ The punitive damage provision in § 303(i)(2)(B) is designed to deter the filing of harassing or frivolous involuntary petitions. The involuntary bankruptcy proceeding, while advantageous where used properly, has a strong susceptibility to abuse. It also has the potential to cause significant hardship to alleged debtors who did nothing to warrant such burdens. "It usually chills the alleged debtor's credit and his sources of supply. It can scare away his customers. It leaves a permanent scar, even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this court." *In re SBA Factors of Miami, Inc.*, 13 B.R. at 101.

Courts have awarded punitive damages for a variety of misconduct. *See In re Johnston Hawks Ltd.*, 72 B.R. 361 (Bankr.D.Hawai'i 1987) (punitive damages awarded where petitioner negligently con-

ducted a pre-filing investigation of debtor); *see also Camelot, Inc. v. Hayden,* 30 B.R. 409 (E.D.Tenn.1983) (punitive damages awarded against petitioners where they knew that they did not qualify as petitioning creditors).

■ An award of punitive damages in this case will further the principles that § 303(i)(2) was specifically designed to protect. "[P]unitive damages are appropriately awarded in response to particularly egregious conduct or a purely frivolous filing." *In re Mundo Custom Homes, Inc.,* 179 B.R. at 571. In *In re Camelot, Inc.,* 25 B.R. 861 (Bankr.E.D.Tenn.1982), the court addressed comparable conduct to that found here. In that case, the court awarded the alleged debtor $1,000.00 in punitive damages where petitioners actually owed the alleged debtors money. The court stated, "It is particularly disturbing to the court that the [petitioners] were not even creditors of the debtor when they filed the involuntary petition...." *Id.* at 868. In these cases, as in *Camelot,* Petitioners were not creditors and in fact owed the alleged debtors money. As discussed above, any factual or legal basis for their claim was fictitious and unreasonable. Further, Petitioners corralled DeLorean and Judge Carroll into unnecessary litigation. Finally, Petitioners wasted judicial time and resources in filing these frivolous petitions.

■ An award of punitive damages in these cases serves two purposes. First, it punishes Petitioners for their actions and deters them from filing similar suits in the future. Second, it preserves the proper function of involuntary bankruptcy by generally discouraging its abuse and by encouraging proper filings. The egregious facts of these cases lead the Court to exercise its discretion and grant the motions for punitive damages.

■ Neither Judge Carroll nor DeLorean specifies an amount sought for punitive damages, leaving it instead to the discretion of the Court to fashion a remedy that would likely deter similar misconduct. "The general rule is that the amount of punitive damages must bear some reasonable relation to the injury inflicted and its cause." *In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. at 805. Traditionally, courts evaluate such factors as the nature and extent of the injury to the alleged debtor, the intent of the bad faith petitioners, and surrounding circumstances. *See In re Mundo Custom Homes, Inc.,* 179 B.R. at 571. *See also, In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. at 805–06 (awarding $25,000.00 in punitive damages where faced with a "blatant attempt" to circumvent the requirements of the Bankruptcy Code). *Sjostedt v. Salmon (In re Salmon),* 128 B.R. 313, 318–19 (Bankr. M.D.Fla.1991) (awarding $250,000.00 in punitive damages where petitioners acted willfully and maliciously); *In re Camelot, Inc.,* 25 B.R. at 869 (assessing $1,000.00 in punitive damages where petitioners "vindictively" filed their petition). Also, the court should attempt to further overriding bankruptcy policies while ensuring that the penalty is not "unduly harsh." *In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. at 805 (quoting *In re Fox Island Square,* 106 B.R. 962, 968 (Bankr.N.D.Ill.1989)). The court should take into account the petitioner's financial situation in determining what amount of sanctions will further the purposes served by punitive damage awards. *See TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 462, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (holding that defendant's wealth is a traditional and acceptable factor where calculating punitive damages).

■ In these cases, Petitioners chose not to inform the Court about their finan-

**586**

cial situations. Although Petitioners' financial status is undocumented, the Court notes that they will already bear the financial burden of paying DeLorean and Judge Carroll's costs and fees. Any punitive damage award, therefore, should be limited in nature. In a correlative case, *In re Camelot, Inc.*, the court determined that punitive damages totaling $1,000.00 was sufficient. A punitive damages award in this range is reasonable to simultaneously punish Petitioners for their actions and to make the point that the bankruptcy system should not be misused in the future. The Court, therefore, awards punitive damages in the amount of $1,000.00 per case against each of the Petitioners, individually.

## II. *Sanctions Under Bankruptcy Rule 9011*

■ Judge Carroll and DeLorean, in the alternative, request attorneys' fees and costs under Bankruptcy Rule 9011 which functions to deter inappropriate filings and compensate parties who are injured by them.[7] As Rule 9011 applies both to parties and counsel, and governs all papers filed with the court, Petitioners are subject to its constraints. It is unnecessary to consider whether these fees should be transferred under Rule 9011, however, in light of the fact that the sanction provi-

sions in § 303 serve an identical purpose in an involuntary bankruptcy context. Because § 303 specifically deals with inappropriate involuntary filings, the Court believes it more appropriate and effective to assess costs and attorneys' fees under § 303(i).

## CONCLUSION

For the reasons stated:

(1) Cadillac by DeLorean's motion for costs, attorneys' fees, and damages is granted in part. DeLorean is awarded $19,459.08 in fees and costs against Petitioners, jointly and individually, together with punitive damages in the amount of $1,000.00 against each of the Petitioners individually; and

(2) Judge Patrick Carroll's motion for sanctions is granted. Judge Carroll is awarded $10,310.25 in costs and fees against Petitioners, jointly and severally, together with punitive damages in the amount of $1,000.00 against each of the Petitioners individually.

A separate order will be entered in each case in accordance with this decision.

---

7. Rule 9011 provides:

(b) *Representations to the Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorney's, law firms, or parties.

FED.R.BANKR.P. 9011(b) and (c).